**CITIZENS ENERGY COALITION OF INDIANA, d/b/a Citizens Action Coalition of Indiana, et al., Plaintiffs-Appellees,**

v.

**Theodore L. SENDAK, Attorney General of Indiana, et al., Defendant-Appellant.**

**Nos. 78–2509, 78–2601.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1979.

Decided March 28, 1979.

Richard A. Young, Alan L. Crapo, Asst. Atty. Gen., Indianapolis, Ind., for defendant-appellant.

Louis Rosenberg, Indianapolis, Ind., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, and SPRECHER and TONE, Circuit Judges.

SPRECHER, Circuit Judge.

This is an appeal from the granting of a preliminary injunction enjoining the Attorney General of Indiana from refusing to approve subgrants for financial assistance allocated by the Public Counselor of Indiana, in accordance with Section 205(a) of the Energy Conservation and Production Act of 1976, 42 U.S.C. § 6805(a), establishing state consumer protection offices, solely on the basis that the subgrantees retain lobbyists.

I

Enacted as part of the Energy Conservation and Production Act, Section 205(a) (hereafter referred to as 42 U.S.C. § 6085(a)) was intended to provide financial assistance to state offices of consumer services for the purpose of facilitating the presentation of consumer interests before utility regulatory commissions. 42 U.S.C. § 6801. A state office of consumer services so financed must "assist consumers in the presentation of their positions before utility regulatory commissions" and "advocate, on its own behalf, a position which it determines represents the position most advantageous to consumers." Section 6805(a).[1] Fi-

nancial grants are now made by the Department of Energy.

An Indiana statute provides that the governor shall appoint a practicing attorney as public counselor to represent the public in utility rate hearings before the state Public Service Commission.[2] Ind.Code 8–1–1–4.

In September, 1977, the Public Counselor of Indiana had applied for and received from the Department of Energy (DOE) a $200,000 grant under § 6805(a), which was approved by the Indiana Attorney General as to "form and legality." Eighty-Four Thousand dollars of this grant was allocated for financial and technical assistance to consumer groups in order to facilitate participation in utility rate proceedings.

On December 21, 1977, the Public Counselor executed a proposed contract with the Citizens Energy Coalition, Inc. (Coalition), an Indiana private, not-for-profit organization, for services to be performed by the Coalition for $5,000 under § 6805(a). An Indiana statute provides that all contracts entered into by state agencies shall be approved as to form and legality by the Attorney General. Ind.Code 4–13–2–14.[3] On March 29, 1978, the Indiana Attorney General disapproved the proposed contract in part because the Coalition maintained a registered lobbyist and "a conflict may arise under the terms of IC 2–4–3 et seq."[4]

---

1. 42 U.S.C. § 6805(a) provides:

   The Administrator may may grants to States . . . under this section to provide for the establishment and operation of offices of consumer services to assist consumers in their presentations before utility regulatory commissions. Any assistance provided under this section shall be provided only for an office of consumer services which is operated independently of any such utility regulatory commission and which is empowered to—

   (1) make general factual assessments of the impact of proposed rate changes and other proposed regulatory actions upon all affected consumers;

   (2) assist consumers in the presentation of their positions before utility regulatory commissions; and

   (3) advocate, on its own behalf, a position which it determines represents the position most advantageous to consumers,

taking into account developments in rate design reform.

2. The preliminary injunction also enjoined the public counselor from refusing to consider subgrant applications for financial assistance from consumer groups pursuant to 42 U.S.C. § 6805, solely on the basis that such groups retain lobbyists. However the public counselor did not appeal.

3. Ind.Code 4–13–2–14 provides:

   All contracts and leases shall be approved as to form and legality by the attorney-general. A copy of every such contract or lease extending for a term longer than one [1] year shall be filed with the director of public works and supply [department of administration].

4. The Attorney General also disapproved the contract because it "would have the effect of tending to lessen the performance of public duties." The district court concluded that "it

The district court held that to "disapprove the contract of December 21, 1977 on the grounds that the contract would be in conflict with Ind.Code 2–4–3–7 [prohibiting lobbying for pay by public officials] would be an erroneous disapproval." [5]

· After the Attorney General had disapproved the Coalition contract, the Coalition submitted to the Public Counselor three proposals seeking § 6805(a) financial assistance totaling $46,000. The Indiana Public Interest Research Group (Research Group), also an Indiana private, not-for-profit organization which maintained a registered lobbyist, submitted a proposal for financial assistance in the amount of $9,785 to the Public Counselor.

In the meantime the Public Counselor on April 5, 1978, wrote to the Attorney General with supporting affidavits, requesting reconsideration of the disapproval of the original $5,000 contract. Several days later the Attorney General returned the Public Counselor's letter with a notation that the· "A.G. will not accept lobbyist or organization on contract." [6]

On April 17, 1978, the Public Counselor by letter requested the advice of the Attorney General as to whether or not he could make grants under § 6805(a) to consumer groups who had lobbied in the preceding session of the Indiana General Assembly. No formal or informal written response was ever made to this request.

In letters of May 30 and 31, 1978, the Public Counselor advised the Coalition and the Research Group that he was unable to approve their requests for financial assistance "in view of the ruling of the Indiana Attorney General which prohibits my contracting with any organization or individual registered as a lobbyist during the most recent session of the Indiana General Assembly." [7]

The Public Counselor did approve an application for financial assistance in the amount of $24,000 by the Consumer Center of Fort Wayne, Indiana, which organization did not retain a lobbyist.

In June, 1978, DOE directed the public counselor to refrain from spending or committing any further funds allocated for § 6805(a) financial assistance "until such time as the 'lobbyist' issue has been satisfactorily resolved."

On June 14, 1978, the Coalition and the Research Group filed their complaint in this action against the Attorney General and the Public Counselor. On October 17, 1978, the district court, upon the plaintiffs' motion, granted the preliminary injunction.

## II

■ In his appeal the Attorney General first argued that the district court did not have subject matter jurisdiction. The district court concluded that it did have jurisdiction, finding that "the constitutional

---

was within the discretion of the Attorney General to disapprove the contract on that ground, but not on the ground that the contract might conflict with Ind.Code 2–4–3–7." The Coalition has not appealed the validity of the disapproval of the contract upon the lessening of the performance of public duties ground.

5. Ind.Code 2–4–3–7 provides in part:

It shall be unlawful for any public official of this state, or of any county, township, city or town, including elective and appointive officers and employees, or any officer, member or employee of any state central committee of any party, to receive any compensation to appear before the general assembly of the state of Indiana, or before either house or any committees of the general assembly or either house thereof or before any member as a legislative counsel or agent on behalf of any

person, firm, corporation or association from which he directly or indirectly receives any compensation or salary, other than the state of Indiana, or the county, township, city, town or state central committee with which he is associated.

6. The district court found that "this evidence comes closest to any proof that the Attorney General's nonacceptance of the 'Organization' was arbitrary in nature."

7. The Public Counselor also refused to consider an application for § 6905(a) financial assistance by the Indiana State AFL–CIO on the grounds that that consumer group had lobbied during the preceding session of the Indiana General Assembly and therefore was ineligible as a result of his understanding of the Attorney General's policy.

claims in this action are substantial" and that the action raised the issue of whether public officials acting under color of state law have deprived the plaintiffs of their constitutional rights. In addition the cause arises under an act of Congress. 28 U.S.C. § 1337.

▇ In regard to the Attorney General's argument that the Eleventh Amendment bars the action, the Supreme Court again reaffirmed in *Quern v. Jordan,* —— U.S. ——, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358, 364 (1979) that "under the landmark decision in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law . . .." The plaintiffs also have standing.

▇ Next the Attorney General contended that the district court should have abstained but it declined to do so. "Abstention is . . . appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

The state statute here involved is simple and uncomplicated. Ind.Code 2–4–3–7 prohibits public officials from lobbying. The district court expressly found that "the Public Counselor would not directly or indirectly receive compensation for lobbying by virtue of the DOE grant program." The court further found that the "plaintiffs are neither public officials nor employees within the meaning of the statute." The court also concluded:

> If an application for financial assistance or a subgrant pursuant to 42 U.S.C. § 6805 were allotted to . . . [the plaintiffs], said parties would not become public officials or employees within the meaning of Ind.Code 2–4–3–7.

▇ The district court properly exercised its discretion in declining to abstain. As the Supreme Court noted in *Colorado River, supra* at 815 n. 21, 96 S.Ct. at 1245, "the presence of a federal basis for jurisdiction [as opposed to diversity jurisdiction] may raise the level of justification needed for abstention." The Attorney General has not shown any sound justification which would make abstention appropriate.

▇ Finally the Attorney General has argued that the preliminary injunction jeopardizes his right to exercise discretion in approving contracts. The district court found and concluded as to this argument and we agree:

> 5. The Attorney General exercises a quasi-judicial professional discretion when approving contracts pursuant to Ind.Code 4–13–2–14. However, in determining whether to approve or disapprove state contracts, the Attorney General may only consider the legality and form of the proposed contract. The Attorney General has a mandatory duty to approve all contracts which are lawful as to form and content. The Attorney General has no discretion to reject a contract which is lawful as to form and content; he is not a party to the contract.

> \* \* \* \* \* \*

> 10. A valid state law such as Ind.Code 2–4–3–7 cannot be applied in a way to thwart the exercise of a right guaranteed by the Constitution and laws enacted by Congress. *See NAACP v. Thompson,* 357 F.2d 831, 833 (5th Cir.), *cert. denied,* 385 U.S. 820, 87 S.Ct. 45, 17 L.Ed.2d 58 (1966).

### III

▇ The discretion of the district court in granting a preliminary injunction is measured by (1) whether the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction did not issue; (2) whether the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendants; (3) whether the plaintiffs have at least a reasonable likelihood of success on the merits; and (4) whether the granting of the preliminary injunction will not disserve

the public interest. *Fox Valley Harvestore, Inc. v. A. O. Smith Harvestore Products, Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976).

The district court expressly found all of these factors to exist and to weigh particularly heavily in favor of the plaintiffs. For example, the court found that federal funding for Indiana consumer groups has been paralyzed by the Attorney General's refusal to approve subgrants to organizations retaining lobbyists and that the entire state program envisaged by § 6805(a) may be in jeopardy and subject to imminent destruction. The Attorney General has not addressed these factors in his appeal. Consequently we cannot say that the district court abused its discretion.

The preliminary injunction order is affirmed.

TONE, Circuit Judge, concurring.

It is enough to give the federal courts jurisdiction that the First Amendment question is substantial. Without going further in our consideration of that question, we should affirm because of the high probability that plaintiffs will succeed at least on the state law issues of the proper interpretation of Ind.Code 2–4–3–7 and the absence of any other sufficient ground for disapproval by the Attorney General. This, together with the other factors making a preliminary injunction appropriate, is enough to support affirmance. I therefore concur in affirming the preliminary injunction.