**MOTHER GOOSE NURSERY SCHOOLS, INC., an Indiana Not-for-Profit Corporation, Plaintiff,**

v.

**Theodore L. SENDAK, Individually and as Attorney General of the State of Indiana, Defendant.**

Civ. No. H 78-449.

United States District Court,
N. D. Indiana,
Hammond Division.

Dec. 16, 1980.

---

John Kappos and Hawk P. C. Kautz, Kappos & Kautz, Merrillville, Ind., for plaintiff.

Donald P. Bogard, Chief Counsel, William G. Mundy, Alan L. Crapo, Asst. Attys. Gen., State of Ind., Indianapolis, Ind., Gilbert F. Blackmun, Friedrich, Bomberger, Tweedle & Blackmun, Highland, Ind., for defendant.

## MEMORANDUM DECISION

McNAGNY, District Judge.

This matter comes before the Court on defendant's motion for summary judgment and plaintiff's cross motion for summary judgment.

On or about June 30, 1978 a contract was submitted to the defendant, serving in his capacity as Attorney General of the State of Indiana, for consideration. This contract concerned an agreement between the plaintiff and the Indiana State Department of Public Welfare whereby the plaintiff would provide transportation and day care services to children of public assistance recipients and other low income persons in the State of Indiana for the period from July 1, 1978 to June 30, 1979. In return the Indiana Department of Public Welfare, in cooperation with the Federal Government, would reimburse the plaintiff for providing such services. All contracts entered into by state agencies such as the Indiana Department of Public Welfare must be approved by the attorney general pursuant to Ind. Code 4–13–2–14 which reads, "All contracts and leases shall be approved as to form and legality by the attorney–general. A copy of every such contract or lease extending for a term longer than one [1] year shall be filed with the director of public works and supply [department of administration]."

Following the submission of the contract to the defendant pursuant to Ind. Code 4–13–2–14, the defendant rejected the contract.

This case comes before this Court on an action for declaratory judgment, injunctive relief and for damages against the Attorney General for arbitrarily refusing to approve the contract as to its form and legality all in violation of Title 42 U.S.C. § 1983. This Court took jurisdiction based upon Title 28 U.S.C. §§ 1331 and 1343.

### Findings of Fact

The plaintiff, Mother Goose Nursery School, has been annually licensed as a day nursery from 1954 until October 23, 1975 when pursuant to the Indiana Not–for–Profit Corporation Act of 1971, they were issued a Certificate of Incorporation by the Secretary of State of Indiana. The plaintiff is now and has been since its incorporation in good standing under the laws of the State of Indiana. Since October 23, 1975, the plaintiff has annually been licensed as a day care nursery.

After its incorporation in 1975, the plaintiff entered into contracts with various agencies of the State of Indiana. During this period Anthony Cifaldi was a director of the plaintiff corporation and retained such position until he resigned on October 1, 1978, as a result of a letter he received from the Administrator of the Indiana Department of Public Welfare, Wayne Stanton. This letter requested that he remove himself as administrator and also that he remove himself from the Board of Directors of the plaintiff corporation.

These events came about as a result of the defendant's rejection of the contract submitted to him for approval as to form and legality, and as a result of a letter written by the defendant to the Governor of Indiana on September 26, 1978. This letter informed the Governor that the defendant disapproved the contract because Anthony Cifaldi had received a sentence in the United States District Court in 1972 for filing and subscribing to false income tax

returns. The letter additionally noted that Cifaldi had been found guilty on November 10, 1977 for swearing to and verifying a false and fraudulent statement of his tax return in 1966. At the time of the contract's disapproval, Cifaldi was on probation.

Following the resignation of Anthony Cifaldi, the Board of Directors of plaintiff corporation advised the Administrator of the Department of Public Welfare and the defendant that Cifaldi's resignation had been accepted by the Board. Subsequent to this time the contract was never approved nor was the plaintiff informed of any reasons for non–approval after Cifaldi's requested resignation.

### Conclusions of Law

In order to sustain a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, the parties must show that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law.

In this case the facts are virtually undisputed by the parties. Therefore, the issues confronting this Court are whether the defendant can withstand this claim based on executive immunity, and additionally, if no such immunity is found to exist, did the defendant have the power or the authority to reject a contract submitted to him that was proper in form.[1]

"For purposes of establishing jurisdiction under 28 U.S.C. § 1343(3), it is irrelevant whether or not a public official is acting in accordance with state law, so long as said person, acting under color of state law, has arguably deprived another person of rights secured by the Federal Constitution." *Citizens Energy Coalition of Indiana, Inc. v. Sendak*, 459 F.Supp. 248, 256 (S.D.Ind.1978). Here there is no question that the defendant was acting under his authority as Attorney General and thus under color of state law.

1. The defendant admits in his deposition that he could find no defect in the contract and that his only consideration in disapproving the contract was Cifaldi's prior violations of the law.

Traditionally, higher officials are entitled to immunity from liability under the Eleventh Amendment to the United States Constitution. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). However, in recent years the Supreme Court has narrowed the scope of immunity privilege, holding that although officials charged with tortious acts under state law may still be allowed an absolute immunity if the acts complained of are outside their authority, those charged with unconstitutional acts are entitled only to a qualified immunity. "[I]t has been settled that the Eleventh Amendment provides no shield for a *state* official confronted by a claim that he had deprived another of a federal right under color of state law." *Scheuer v. Rhodes,* 416 U.S. 232, 237, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974) (emphasis added).

 Although it is now clear that absolute immunity is no longer a bar to suit when a constitutional violation has occurred, a qualified immunity for officials remains. The usual standard in assessing the immunity of officers is their good faith and probable cause in acting as they did. *See Pierson v. Ray,* 386 U.S. 547, 557, 87 S.Ct. 1213, 1219, 18 L.Ed.2d 288 (1967). The extent of such immunity depends on varying circumstances. In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), the Supreme Court enumerated these circumstances in a suit brought against the governor of Ohio. "In the case of higher officers of the executive branch, however, the inquiry is far more complex since the range of decisions and choices— whether the formulation of policy, of legislation, of budgets, or of day–to–day decisions—is virtually infinite." *Id.* at 246, 94 S.Ct. at 169. As a result, the Court grants higher officials a wider latitude of discretion in their decisions. "In short, since the options which a chief executive and his principal subordinates must consider are far broader and far more subtle than those made by officials with less responsibility, the range of discretion must be comparably broad." *Id.* at 247, 94 S.Ct. at 1692.

 The defendant in this case is a principal subordinate as discussed in the above–quoted language. Therefore, it is readily apparent to this Court that he should be granted a liberal qualified immunity. The degree of liberality afforded a higher official is further discussed in *Scheuer.*

These considerations suggest that, in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, coupled with good–faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct. Mr. Justice Holmes spoke of this, stating:

'No doubt there are cases where the expert on the spot may be called upon to justify his conduct later in court, notwithstanding the fact that he had sole command at the time and acted to the best of his knowledge. That is the position of the captain of a ship. But even in that case a great weight is given to his determination and the matter is to be judged on the facts as they appeared then and not merely in the light of the event.' *Moyer v. Peabody,* 212 U.S. 78, 85 [29 S.Ct. 235, 236, 53 L.Ed. 410] (1909). (Citations omitted.)

*Id.* at 247–248, 94 S.Ct. at 1692. Thus, it appears that if the defendant in this case had a good faith belief that he was acting properly, which this Court believes the defendant possessed, then he should be granted immunity. However, in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Supreme Court further defined what the reasonable grounds and a good faith belief entails.

We consider here, as we did in *Scheuer,* the need to protect officials who are re-

quired to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. Yet *Scheuer* and other cases have recognized that it is not unfair to hold liable the official who *knows or should know* he is acting outside the law. (Emphasis added.)

*Id.* at 506, 98 S.Ct. at 2911. *See also Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). Although *Butz* dealt with the immunity of federal officials, this standard is equally applicable to state officials who have violated constitutional rights. "The principle should prove as workable in suits against federal officials as it has in the context of suits against state officials." *Id.* at 507, 98 S.Ct. at 2911.

■ Therefore, even though this Court determines that the Attorney General was acting in good faith when he decided to disapprove the contract, it must further be determined whether he should have known that he was acting outside the law. Such a determination has been considered by the Honorable Judge Steckler, Chief Judge of the Southern District of Indiana and by the United States Court of Appeals for the Seventh Circuit. In *Citizens Energy Coalition of Indiana, Inc. v. Sendak*, 594 F.2d 1158 (7th Cir. 1979), the Seventh Circuit approved the following statement by Judge Steckler:

The Attorney General exercises a quasi–judicial professional discretion when approving contracts pursuant to Ind. Code 4–13–2–14. However, in determining whether to approve or disapprove state contracts, the Attorney General may only consider the legality and form of the proposed contract. The Attorney General has a mandatory duty to approve all contracts which are lawful as to form and content. The Attorney General has no discretion to reject a contract which is unlawful as to form and content; he is not a party to the contract.

*Id.* at 1162.

■ Thus, the Attorney General acted beyond the scope of his statutory authority and outside of the law in not accepting the contract in issue and should have realized that he was doing so. In fact, the defendant in this case had no authority to exercise his discretion in the first place. "He has a mandatory duty to approve all contracts which are lawful as to form and content." *Id.*

It should be noted that in *Citizens Energy Coalition of Indiana v. Sendak*, 459 F.Supp. 248, 258 (S.D.Ind.1978), the court stated that, "The Attorney General, acting in his quasi–judicial capacity, is immune from liability for monetary damages. However, this immunity does not extend to injunctive relief." This Court cannot agree with this statement. "Historically, damages have been regarded as the ordinary remedy for an invasion of personal interests in liberty." *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 395, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971). "In situations of abuse, an action for damages against the responsible official can be an important means of vindicating constitutional guarantees." *Butz v. Economou*, 438 U.S. 478, 505, 98 S.Ct. at 2910 (1978). Injunctive relief would afford little remedy to the injured parties in this case. The harm took place more than two years ago. "Injunctive or declaratory relief is useless to a person who has already been injured." *Id.* at 504, 98 S.Ct. at 2910. "But 'it is . . . well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.' *Bell v. Hood*, 327 U.S. [678] at 684 [66 S.Ct. 773 at 777, 90 L.Ed. 939]." *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 396, 91 S.Ct. 1999, 2004, 29 L.Ed.2d 619 (1971); *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 2276, 60 L.Ed.2d 846 (1979).

The appropriate means of redressing a wrong will vary as the circumstances dictate.

[D]amages against individual defendants are a permissable remedy in some circumstances notwithstanding the fact that they hold public office. *Myers v. Anderson*, 238 U.S. 368 [35 S.Ct. 932, 59 L.Ed.

1349] (1915). See generally *Monroe v. Pape*, 365 U.S. 167 [81 S.Ct. 473, 5 L.Ed.2d 492] (1961); *Moor v. County of Alameda*, 411 U.S. 693 [93 S.Ct. 1785, 36 L.Ed.2d 596] (1973). In some situations a damage remedy can be as effective a redress for the infringement of a constitutional right as injunctive relief might be in another.

*Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974).

In *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), the Supreme Court reiterated its position on the impact of a violation of Section 1983 and the ramifications of an award of damages for such a violation.

Indeed, a decisionmaker would be derelict in his duties if, at some point, he did not consider whether his decision comports with constitutional mandates and did not weigh the risk that a violation might result in an award of damages.... 'Whatever other concerns should shape a particular official's actions, certainly one of them should be the constitutional rights of individuals who will be affected by his actions. To criticize section 1983 liability because it leads decisionmakers to avoid the infringement of constitutional rights is to criticize one of the statute's *raisons d'être.*'

*Id.* 100 S.Ct. at 1418. Accordingly, if liability is found under Section 1983, then damages can be awarded in this case.

■ In order to find liability under 42 U.S.C. § 1983, there must be a deprivation of a right, privilege, or immunity secured by the Constitution. Therefore, it must be determined whether Sendak violated one of the plaintiff's Constitutional rights before liability can be imposed in this case. In this instance the plaintiff was denied the right to perform under a contract that was entered into for the performance of services. The plaintiff, a valid corporation in good standing, entered into the contract with an agency of the State of Indiana. As a corporation, the plaintiff has all the rights and privileges afforded a person and can sue for deprivation of rights secured by the Consti-

tution and laws. *Des Vergnes v. Seekonk Water District*, 601 F.2d 9 (1st Cir. 1979); *Advocates For Arts v. Thompson*, 532 F.2d 792 (1st Cir. 1976); *Pennsylvania Bank and Trust Co. v. Hanisek*, 426 F.Supp. 410 (W.D. Pa.1977).

■ In denying the plaintiff's right to contract, the defendant denied the plaintiff one of its rights protected by the Fourteenth Amendment. The Supreme Court in *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), attached a broad meaning to the words "liberty" and "property" in the Due Process Clause of the Fourteenth Amendment when it stated:

While this Court has not attempted to define with exactness the liberty ... guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint but also *the right of the individual to contract*, to engage in any of the common occupations of life, ... In a Constitution for a free people, there can be no doubt that *the meaning of 'liberty' must be broad indeed.* (Emphasis added.)

*Id.* at 572, 92 S.Ct. at 2706.

In *Roth*, the Supreme Court found that a contractual interest was a significant property interest which should be protected by procedural due process. The Supreme Court stated that "[W]hen protected interests are implicated, the right to some kind of a prior hearing is tantamount." *Id.* at 569–70, 92 S.Ct. at 2705. Thus, certain contractual interests are afforded the protection of procedural due process.

■ It is felt that the contract in this case should be afforded such protection. It has already been determined that the defendant exceeded his authority in disapproving the contract. Additionally, the contract was complete and valid on its face. In fact, such contracts had been entered into between the parties in prior years. The plaintiff in this case had a sufficient interest in the contract to at least be af-

forded some kind of explanation for its disapproval and also thereafter to be afforded at least a minimal opportunity to confront and refute the charges. This is true especially in light of the knowledge that the defendant had no power to exercise any discretion in approving or disapproving the contract. The plaintiff was provided nothing. It was not officially informed of why the contract was disapproved nor was it given an opportunity to be heard. The plaintiff might well have assumed that the contract was not approved because of its form. But even if this was the case, it still would not have been provided an opportunity to contest this matter.

Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are *defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.* Thus, the welfare recipients in *Goldberg v. Kelly, supra,* had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so. (Emphasis added.)

*Id.* at 577, 92 S.Ct. at 2709. The Supreme Court further defined when procedural due process should be afforded a party in the companion case to *Roth, Perry v. Sinder-*mann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 723 (1972), where the court stated:

'[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' ... A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Id.* at 601, 92 S.Ct. at 2699.

The plaintiff in this case had a legitimate expectation that the contract would be approved. The contract was proper in form and content, and similar contracts had been approved in the past. All the details had been worked out between the parties to the contract. The Attorney General was not a party to the contract and had no authority to contest the contract on the grounds that he thought the plaintiff should not be licensed to provide day care services. This job belonged to another agency of the state. The plaintiff had a legitimate claim of entitlement under Indiana statutes that the contract be approved summarily.[2] The plaintiff was denied this claim without any opportunity to contest the matter.

Lastly, the plaintiff's good name as a reputable day care center was in jeopardy. Newscasts broadcast on the radio and articles published in the newspaper ran stories

2. Additionally, under Ind. Code § 25–1–1.1·1, "A license or certificate of registration that an individual is required by law to hold to engage in a business, profession, or occupation may not be denied, revoked or suspended because the applicant or holder has been convicted of an offense. The acts from which his conviction resulted may, however, be considered as to whether the applicant should be entrusted to serve the public in a specific capacity." In *Indiana State Board of Registration and Education v. Cummings,* 68 Ind.Dec. 444, 387 N.E.2d 491, 495 (1979), the court stated that it is only if the acts leading to the convictions have a direct bearing on an applicant's present fitness to be licensed that they may be the basis for a denial of a license. So even if the Attorney General did have a right to reexamine the validity of the plaintiff's license, which he did not, he must at least make some sort of showing that Cifaldi was not presently fit to be licensed. The incident for which Cifaldi was convicted took place more than ten years prior to the defendant's consideration of the contract and there was no inquiry to determine the acts upon which the convictions were based. Also, the defendant made no attempt to differentiate or distinguish Cifaldi from that of the plaintiff corporation. The party to the contract was a corporation acting through its directors and shareholders, but the defendant disregarded this fact and treated the corporation as the alter ego of Anthony Cifaldi.

which speculated as to the reasons for the nonapproval of the contract. "[W]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.... In such a case, due process would accord an opportunity to refute the charge." *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972).

■ The plaintiff's right to contract and due process rights were violated by the defendant in this case. As a result of these violations the plaintiff has been forced to suffer harm which can only be remedied by remuneration.

Based on the aforementioned considerations, this Court now finds that the defendant, Theodore Sendak, is liable to the plaintiff for a violation of its Constitutional rights.

It is therefore ORDERED that the motion of the defendant for summary judgment be and hereby is DENIED. It is FURTHER ORDERED that the cross motion of the plaintiff for summary judgment be and hereby is GRANTED.

Since this Court has heard no evidence as to damages in this matter, the parties will be given twenty–one (21) days in which to file briefs on this point, whereupon the matter will be set for a hearing on the issue of damages only.