**Robert J. ADAMS, Jr., Lawrence William Korrub and Tom O'Connell Holstein and Robert E. McKenzie, Plaintiffs,**

v.

**ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF the SUPREME COURT OF ILLINOIS, and Carl H. Rolewick, its Administrator, Defendants.**

**Nos. 84 C 3548, 84 C 4771, 84 C 5179 and 84 C 5711.**

United States District Court, N.D. Illinois, E.D.

Aug. 15, 1985.

---

Richard W. Cosby, Dozoryst, Cosby & Brustein, Chicago, Ill., for plaintiffs.

Robert J. Adams Jr., Lawrence William Korrub, Tom O'Connell Holstein and Robert E. McKenzie, Chicago, Ill., pro se.

John C. O'Malley and Theresa M. Gronkiewicz, Chicago, Ill., for defendants.

## MEMORANDUM AND ORDER

MORAN, District Judge.

This case raises the question whether the Illinois Attorney Registration and Disciplinary Commission (Commission) can constitutionally prohibit a lawyer from advertising through the mail to a targeted audience. Plaintiffs are all practicing attorneys who have done or plan to do direct mail advertising. They seek injunctive and declaratory relief. Before the court at this time is their motion for preliminary injunction.

### Facts

On April 6, 1984, the Illinois Supreme Court amended Disciplinary Rule 2–103 of the Code of Professional Responsibility to read, in relevant part:

(b) A lawyer may initiate contact with a prospective client in the following circumstances:

\* \* \* \* \* \*

(2) by written communication distributed generally to persons not known in a specific matter to require such legal services as the lawyer offers to provide but who in general might find such services to be useful and providing that such letters and circulars and the envelopes containing them are plainly labeled advertising material;

\* \* \* \* \* \*

(e) ... A copy of any written private communication recommending or soliciting professional employment, together with the name and address of each person to whom the communication is sent,

shall be filed with the Attorney Registration and Disciplinary Commission within thirty days after it is sent.

The amended rule became effective May 1, 1984.

Plaintiffs Adams, Korrub, Holstein and McKenzie filed this suit on April 25, 1984, challenging the part of Rule 2–103(b)(2) which prohibits direct mail advertising by a lawyer to persons known to require such specific legal services as that lawyer offers to provide.[1] They specifically did not challenge any other part of the amended rule.

Each attorney devotes much of his practice to certain specific legal problems and periodically sends out mailings to those whom he thinks are in need of his services with respect to those problems. Typically, the list for these mailings comes from an agency responsible for keeping track of those with such a problem. For example, Kaplan is a bankruptcy lawyer and he receives lists of debtors against whom a judgment has been entered from Circuit Court.

The court granted plaintiffs a temporary restraining order on April 26, 1984. In June 1984 defendant Commission filed a complaint in the Supreme Court of Illinois for declaratory judgment on whether the amended rule is constitutional. Plaintiffs (defendants in the state court action) promptly removed the case to this court. By that time the court was aware that the United States Supreme Court had before it a case involving somewhat similar issues, *Philip Q. Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* — U.S. —, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). The court delayed proceedings until decision in that case. The opinion in that case issued on May 28, 1985, and this court now grants plaintiffs a preliminary injunction for the following reasons.

## Governing Law

Recognizing the importance of information in a free market economy, the Supreme Court in *Virginia Pharmacy Board v. Virginia Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1975), extended limited First Amendment protection to commercial speed. A year later, in *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1976), the Court addressed the issue of lawyer advertising. In that case the state prohibited a lawyer from using newspapers to advertise his prices for "routine" legal services. The Court rejected the state's arguments that price advertising has an adverse effect on lawyers' professionalism, is inherently misleading, stirs up litigation, increases the cost of legal services, encourages shoddy work and is so difficult to regulate that an absolute prohibition is necessary. The Court also indicated that advertising can be restrained if it is inherently likely to deceive, or is false, deceptive or misleading in fact. The Court held that these problems are not present in newspaper advertising of prices for "routine" legal services.

The Court addressed the First Amendment concerns of lawyers who solicit business through in-person communication with prospective clients in *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). The case involved an attorney who met with two accident victims, one at the hospital where she was in traction and the other at her home the day she was released from the hospital. The attorney had not been invited by either victim. At these meetings the victims orally agreed to let him represent them, but they later decided against filing suit. The Court held that a prophylactic rule against such in-person solicitation was not unconstitutional because of the inherently injurious nature of such communication. 436 U.S. at 464–66, 98 S.Ct. at 1922–

---

1. Their case has been consolidated with the case of *Kaplan v. Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois, et al.,* No. 84 C 5179, and the case of

*Zalutcky and Pinsky v. Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois,* No. 84 C 4771.

23. The harm the Court found in this speech was that

> [u]nlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection.

*Id.* at 457, 98 S.Ct. at 1919. The Court also found the state had a strong interest in "maintaining standards among members of the licensed professions," *id.* at 460, 98 S.Ct. at 1920, and in "preventing those aspects of solicitation that involve fraud, undue influence, intimidation, overreaching and other forms of 'vexatious conduct.'" *Id.* at 462, 98 S.Ct. at 1921. The Court was careful to base its holding on the actual conduct involved in the case, although it held that the state need not prove actual harm when the circumstances present substantial dangers of harm. *Id.* at 463–64, 98 S.Ct. at 1922. *Ohralik* is the only case to date in which the Court has held that the state could ban a certain form of lawyer advertising.

In *In Re R.M.J.*, 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982), the Court considered regulation of lawyer print advertising that restricted it to certain categories of information and specified language, in some instances, and restrained the mailing of announcement cards to lawyers, clients, friends and relatives. The Court made clear that "regulation—and imposition of discipline—are permissible where the particular advertising is inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive." *Id.* at 202, 102 S.Ct. at 937. The Court also stated:

> Misleading advertising may be prohibited entirely. But the States may not place an absolute prohibition on certain types of potentially misleading information, *e.g.,* ... a listing of areas of practice, if the information also may be presented in a way that is not deceptive....

Even when a communication is not misleading, the State retains some authority to regulate. But the State must assert a substantial interest and the interference with speech must be in proportion to the interest served. Restrictions must be narrowly drawn, and the State lawfully may regulate only to the extent regulation furthers the State's substantial interest.

*Id.* at 203, 102 S.Ct. at 937 (citations omitted). The Court found the state's restrictions unsupported by substantial interests and too broadly written. Regarding the rule on "announcement cards," the Court rejected the state's argument that general mailings from lawyers should be prohibited because they are likely to frighten the public, suggesting that the public's privacy interest can be protected by requiring the lawyer to "stamp 'This is an advertisement' on the envelope." *Id.* at 206 n. 20, 102 S.Ct. at 939 n. 20. The Court recognized that "[m]ailings and handbills may be more difficult to supervise than newspapers," *id.* at 206, 102 S.Ct. at 939, but suggested these difficulties could be alleviated by requiring a lawyer to file with the state a copy of all general mailings.

Most recently, the Supreme Court has dealt with lawyer advertising in *Philip Q. Zauderer v. Office of Disciplinary Counsel of the Supreme Court of Ohio,* —— U.S. ——, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985). The advertising in that case involved a line drawing of a Dalkon Shield, followed by words to the effect that women who had been injured by the shield had legal remedies and that plaintiff has experience in representing such persons on a contingent fee basis that would result in no fee if there was no recovery.

The Court found the phrase, "[i]f there is no recovery, no legal fees are owed," to be misleading because the public is not likely to know the difference between legal fees and other litigation costs, and upheld state regulation in the form of disclosure requirements relating to the terms of contingent fees. The Court held that "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in pre-

venting deception of consumers." *Id.* 105 S.Ct. at 2282. However, the rest of the advertisement passed constitutional muster because it was not inherently misleading and the state could not articulate a substantial governmental interest in prohibiting such advertising. The state argued that such advertising was akin to in-person solicitation and encouraged meritless litigation. The Court rejected both arguments. To the first it replied:

> Print advertising may convey information and ideas more or less effectively, but in most cases, it will lack the coercive force of the personal presence of a trained advocate. In addition, a printed advertisement, unlike a personal encounter initiated by an attorney, is not likely to involve pressure on the potential client for an immediate yes-or-no answer to the offer of representation. Thus, a printed advertisement is a means of conveying information about legal services that is more conducive to reflection and the exercise of choice on the part of the consumer than is personal solicitation by an attorney.

*Id.* at 2277. To the second argument it replied, "the State is not entitled to prejudge the merits of its citizens' claims by choking off access to information that may be useful to its citizens in deciding whether to press those claims in court." *Id.* at 2279 n. 12. Thus, the Court held, "[a]n attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal rights of potential clients." *Id.* at 2280.

While the Supreme Court has not addressed lawyers' use of direct mail advertising to targeted audiences, various lower courts have applied the principles developed above to decide such cases. *See Matter of Von Wiegen,* 101 App.Div.2d 627, 474 N.Y.S.2d 147, *modified* 63 N.Y.2d 163, 481 N.Y.S.2d 40, 470 N.E.2d 838 (1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). *Spencer, III v. Honorable Justices of the Supreme Court of Pennsylvania,* 579 F.Supp. 880 (E.D.Pa. 1984); *Bishop v. Committee on Profes-*

*sional Ethics and Conduct of the Iowa State Bar Association,* 521 F.Supp. 1219 (S.D.Ia.1981), *vacated and remanded on other grounds,* 686 F.2d 1278 (8th Cir. 1982); *Koffler v. Joint Bar Association,* 51 N.Y.2d 140, 432 N.Y.S.2d 872, 412 N.E.2d 927 (1980); *Kentucky Bar Association v. Stuart,* 568 S.W.2d 933 (Ky.1978). The mailings involved in these cases ranged from a letter on law firm stationery sent to two real estate agencies, to a letter sent to the 250 victims of the Hyatt "skywalk" accident. In no case did the court find that the state's interest in regulating commercial speech justified an outright prohibition of direct mail advertising. These cases are discussed in more detail below.

### Plaintiffs' Challenge

In *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977) the Court held that First Amendment overbreath doctrine does not apply to the professional advertising context. Therefore, plaintiffs cannot rest their challenge on the regulation's potential to chill speech but rather must show that their specific conduct or speech is protected. On the other hand, as Justice Brennan pointed out in his concurrence in *Zauderer,* the state may not rely on "highly speculative" or "tenuous arguments," and in the case where the speech is not inherently misleading "must muster record evidence showing that 'a particular form or method of advertising has in fact been deceptive.'" 105 S.Ct. at 2286.

Defendants' arguments rest primarily on the theory that there is a substantive difference between solicitation and advertising. The Committee Comments to amended Rule 2–103 illuminate this theory:

> Solicitation, as distinguished from advertising, connotes a "private" communication targeted at a person or category of persons known by the lawyer to have an immediate potential need for legal services. Rule 2–103(a) accordingly prohibits such solicitations, while Rule 2–103(b)(2) permits general advertising mailings

which are not directed to persons known to require legal services with respect to a specific matter or problem.

Having made the distinction, the Commission places plaintiffs' letters in the solicitation category and relies on *Ohralik* to argue that this type of solicitation is not protected by the First Amendment.

Even if this court were to agree that a "private communication" distinguishes advertising from soliciting, mail and in-person solicitation cannot be so swiftly equated. The Supreme Court in *Zauderer* implicitly distinguished between "print advertising" and "the personal presence of a trained advocate." 105 S.Ct. at 2277. The Court in *In Re Von Weigen* found unconstitutional a state ban on mail solicitation of accident victims, basing its decision on "the distinction between mail solicitation and in-person solicitation...." 63 N.Y.2d at 170, 481 N.Y.S.2d 40, 470 N.E.2d 838. The Court reasoned that the potential for intimidation and pressure for an immediate response which so disturbed the Court in *Ohralik* were not present in the case of mail solicitation. *See also Spencer v. Honorable Justices of Supreme Court of Pennsylvania,* 579 F.Supp. 880, 889–90 (E.D.Pa.1984) (attorney who was also a pilot wanted to send solicitation letters to those in need of his special services); *Kentucky Bar Association v. Stuart,* 568 S.W.2d 933 (Ky.1978) (real estate lawyer wanted to send letters to real estate brokerage firms).

■ The court agrees with the analysis in *In Re Von Weigen, Spencer,* and *Kentucky Bar Association.* The substantial state interests in protecting the public from an invasion of privacy, and from overreaching and undue influence which justified a ban on in-person solicitation upheld

in *Ohralik,* are not inherently present in mail advertising to a targeted audience.[2] Thus, the state can only regulate to the extent reasonably necessary to protect these interests, and the regulations must be narrowly drawn. Rule 2–103(b)(2) requires that the mailings be plainly identified as advertising, thus protecting the privacy of the recipient in the sense that if he does not want to read lawyer advertising he can simply dispose of the envelope with its contents. The state's argument that people treat mail from attorneys differently from other mail was implicitly rejected in *In Re R.M.J.,* 455 U.S. at 206 n. 20, 102 S.Ct. at 939 n. 20. The state cannot limit the public's access to information on the basis that some might find such a letter offensive and, as such, an invasion of their privacy. *See Bolger v. Youngs Drug Products Corp.,* 463 U.S. 60, 103 S.Ct. 2875, 2883, 77 L.Ed.2d 469 (1983).

Similarly, an absolute ban on mailings cannot be justified by the threat of undue influence and overreaching. A letter, even if a "private communication," is a means of conveying information that is "more conducive to reflection and the exercise of choice on the part of the consumer than is personal solicitation by an attorney." 105 S.Ct. at 2277. As the court in *Spencer* said:

> Even if the state could identify specific situations in which mail recipients were particularly susceptible or vulnerable to the persuasive influence contained in a lawyer's letter, an absolute prohibition of direct mailings would not be justified. Rather, direct mailings could be banned only in those identified circumstances.

579 F.Supp. at 890.

■ However, defendants argue that Rule 2–103 takes into account the concerns

**2.** Defendants have submitted one written communication which moves closer to the kind of solicitation prohibited by the Court in *Ohralik.* The communication was a telegram received by the family two hours after the death of a train-truck accident victim. · The telegram stated, "Extremely sorry to hear about accident regarding.... Please contact our law office if we can be of help to you as we have been in the past." When the family called the attorney he could

not remember the name of the victim, let alone any work he had done for the victim. However, the attorney was more than willing to discuss the possibility of a personal injury suit. Although a telegram cannot exert the same kind of pressure on vulnerable people that in-person solicitation can, it is not unreasonable to assume that the recipient of such a letter would feel obligated to answer. A ban of this type of communication might not be unconstitutional.

in *Spencer* by prohibiting only *targeted* mailings, and is thus narrowly drawn to prevent misleading communication. The court cannot see a principled reason for allowing direct mailing to the public at large, but not to target audiences. If a person confronting a mortgage foreclosure receives a solicitation letter like the one sent by plaintiff Adams, his reaction to it will in no way be affected by whether the rest of the world, or only those facing foreclosures, also receive the letter. Thus, the state's narrowly drawn rule cannot be premised on this theory. Rather, the state must have assumed, when writing the rule, that the content of the mailings would differ significantly if target mailings were banned. However, because the content of even targeted mailings can be and are regulated (*see* Rule 2–103(e)), an absolute ban is not "reasonably related to the State's interest in preventing deception of consumers." 105 S.Ct. at 2282. As the Court in *Zauderer* stated:

> [g]iven the possibility of policing the [advertising] on a case by case basis, the prophylactic approach taken by [the State] cannot stand....

105 S.Ct. at 2281.

The court does not deny the state's right to regulate plaintiffs' advertising to ensure it is not misleading or deceptive. *See In Re R.J.M.*, 455 U.S. 191, 203, 102 S.Ct. 929, 937, 71 L.Ed.2d 64 (1982). The Commission might reasonably question Holstein's use of the phrase, "[w]e guarantee you quality representation," and Korrub's promise that once one has filed under Chapter 13 creditors "cannot take money from your paycheck. They cannot harass you." Any regulation of plaintiffs' letters would have to be based on a finding that their content was either inherently deceptive or misleading, or had that effect in fact. *See Zauderer*, 105 S.Ct. at 2283 (discussion of the phrase, "if there is no recovery no legal fees are owed by our clients ...").

■ The Commission, although it has introduced many exhibits of letters lawyers have sent to targeted audiences, has not made any arguments regarding the mis-

leading or deceptive nature of the language contained in the letters. Rather, it has submitted the complaints regarding these letters it received. Most of the complaints were from attorneys representing the recipients of these letters. In the instances where the recipient complained to the Commission, it was mostly to say that the letter generated confusion as to the status of his or her case, or the nature of his or her problem. More than a showing that some people were hassled by these letters is, however, necessary to sustain a blanket prohibition.

### Relief

Plaintiffs seek a preliminary injunction. Ordinarily this case might be an appropriate one in which to apply *Younger* deference to the state court. *See Spencer*, 579 F.Supp. at 892. However, the court in the initial stages of the case asked the Commission to invite the Committee to reconsider the amended rule, thus providing a means by which the Illinois Supreme Court could further review the rule. The Committee refused to reconsider so the Commission brought an action in the Illinois Supreme Court. That case was removed to this court and we determined that it could not be remanded, 600 F.Supp. 390 (N.D.Ill., 1984). This court refused to abstain under those circumstances, and it sees no reason to abstain now. *See People of the State of Illinois v. General Electric Co.*, 683 F.2d 206 (7th Cir.1982), *cert. denied*, 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983).

■ Plaintiffs have met all the requirements for a preliminary injunction. *See Citizens Energy Coalition of Indiana v. Sendak*, 594 F.2d 1158, 1162–63 (7th Cir. 1979), *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). They are faced with a threat of prosecution by defendants, with a harm to their professional standing and reputation which cannot be remedied by money damages, and with a harm that outweighs the harm to defendants of being prevented from enforcing their rule. As the analysis above indicates, the plaintiffs

**456**

also have a strong likelihood of success on the merits.

Given the court's duty to decide the issues involved in this case, and the plaintiffs' showing that a preliminary injunction is the appropriate relief, plaintiffs' motion for preliminary injunction against enforcement of the rule in its present form is granted.