Robert J. ADAMS, Jr., et al., Plaintiffs-Appellees,

v.

ATTORNEY REGISTRATION AND DISCIPLINARY COMMISSION OF the SUPREME COURT OF ILLINOIS, and Carl R. Rolewick, Defendants-Appellants.

No. 85–2600.

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1986.

Decided Sept. 18, 1986.

Theresa M. Gronkiewicz, Chicago, Ill., for defendants-appellants.

Richard W. Cosby, Chicago, Ill., for plaintiffs-appellees.

Before CUDAHY and FLAUM, Circuit Judges, and CAMPBELL, Senior District Judge.*

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

CUDAHY, Circuit Judge.

Plaintiffs-Appellees are attorneys practicing in the State of Illinois. They all rely on targeted direct mail advertising to reach potential clients. Defendants-Appellants, the Attorney Registration and Disciplinary Commission of the Supreme Court of Illinois (the "ARDC" or the "Commission") and its administrator, Carl R. Rolewick, promulgated a disciplinary rule which forbade targeted direct mailing. Plaintiffs sued under 42 U.S.C. § 1983 contending that the rule violated their first and fourteenth amendment rights. They sought a declaration that the rule was unconstitutional and an injunction prohibiting its enforcement. The District Court for the Northern District of Illinois granted plaintiffs' motion for a preliminary injunction. Defendants question the need for this extraordinary remedy and appeal.

Plaintiffs Robert J. Adams, Jr., Lawrence William Korrub, Tom O'Connell Holstein, Irwin Zalutsky, Donald Pinski and Melvin J. Kaplan all have practices specializing in consumer bankruptcy. Each attorney sends direct mailings to individuals with particular debt problems. For example, Adams sends letters to persons who are named defendants in resident mortgage foreclosure proceedings advising the recipient to "Save Your Home" and including a pamphlet which suggests the retention of Adams' law firm to help initiate Chapter 7 or Chapter 13 proceedings. Plaintiffs' First Amended Complaint, Exhibit C–1. Korrub sends letters to individuals subject to garnishment proceedings that encourage the recipient to "protect your paycheck" by initiating Chapter 13 proceedings. The recipient is invited to call Korrub for a "free consultation." Plaintiffs' First Amended Complaint, Exhibit B.

Plaintiff Robert E. McKenzie concentrates his practice on representing individuals and businesses before the Internal Revenue Service's Collection Division. He sends mailings to individuals in Cook and

Du Page counties who have federal tax liens filed against them offering his services as a former IRS officer to help combat "The Arrogant Internal Revenue service." Plaintiffs' First Amended Complaint, Exhibit B-1. Intervenor Daniel Starr sent solicitation letters to victims of a Chicago Transit Authority train collision.

On April 6, 1984, the Supreme Court of Illinois adopted an amendment to Disciplinary Rule ("D.R.") 2–103 of the Illinois Code of Professional Responsibility. The amendment was to take effect May 1, 1984. The challenged portion of the amendment reads:

> (b) A lawyer may initiate contact with a prospective client in the following circumstances:
>
>> (2) by written communication distributed generally to persons not known in a specific matter to require such legal services as the lawyer offers to provide but who in general might find such services to be useful and providing that such letters and circulars and the envelopes containing them are plainly labeled as advertising material.

D.R. 2–103(b)(2).

On April 25, 1984, plaintiffs Adams, Korrub and Holstein filed suit under 42 U.S.C. § 1983 alleging that the disciplinary rule is unconstitutional because it impinges upon their first amendment right to freedom of speech and their fourteenth amendment rights to due process and the equal protection of the laws. Plaintiffs also sought an injunction barring the ARDC from enforcing the disciplinary rule against them, claiming that the rule prohibited their advertising program and thereby caused them professional and financial detriment for which no adequate remedy existed at

law. On April 25, 1984, plaintiffs moved for a temporary restraining order staying the enforcement of the rule, which was granted in part.[1]

McKenzie was added as a plaintiff in May 1984. In June 1984, suits filed by Zalutsky, Pinski and Kaplan against the ARDC were consolidated with the Adams suit.

In June 1984, the Commission filed a complaint in the Supreme Court of Illinois for a declaratory judgment on whether the amended disciplinary rule is constitutional. Plaintiffs, defendants in the state court action, removed the case to federal court and defendants' motion to remand the case back to the state court was denied.[2] In March 1985, Daniel Starr was given leave to intervene in the Adams suit. The district court then stayed determination of plaintiffs' motion for a preliminary injunction until the Supreme Court decided *Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), a case involving attorney advertising. That Supreme Court ruling was issued on May 28, 1985.

In August 1985, the district court granted plaintiffs' motion for an injunction stating:

> Plaintiffs have met all the requirements for a preliminary injunction. *See Citizens Energy Coalition of Indiana v. Sendak*, 594 F.2d 1158, 1162–63 (7th Cir.), *cert. denied*, 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979). They are faced with a threat of prosecution by defendants, with a harm to their professional standing and reputation which cannot be remedied by money damages, and with a harm that outweighs the harm to

---

1. The temporary restraining order allowed plaintiffs to continue advertising as they had before the disciplinary rule was amended but allowed the Commission to continue enforcing its pre-amendment version of D.R. 2–103. *See Adams v. ARDC,* 600 F.Supp. 390 at 392 & n. 2 (N.D.Ill. Dec. 4, 1984).

2. In order to allow the state an opportunity to interpret its disciplinary rule, the district judge encouraged the ARDC to ask the Illinois Supreme Court Committee on Professional Responsibility to consider possible changes in the new rule. The Committee on Professional Responsibility refused to consider any changes. Because the questions in the case were exclusively a matter of federal constitutional law, the court determined that removal had been proper and there was no need for further abstention or remanding. *See Adams v. ARDC,* 600 F.Supp. 390 (N.D.Ill.1984).

defendants of being prevented from enforcing their rule.... [T]he plaintiffs also have a strong likelihood of success on the merits.

*Adams v. ARDC,* 617 F.Supp. 449, 455–56 (N.D.Ill.1985) (citation omitted). Defendants appeal. We affirm.

### I.

In reviewing the district court's grant of a preliminary injunction, our task is clear. "The universally accepted standard for the appellate test of a preliminary injunction is whether there was an abuse of discretion in granting or denying it." *American Dairy Queen Corp. v. Brown-Port Co.,* 621 F.2d 255, 257 (7th Cir.1980) (citation omitted). This standard of review is extremely deferential. "[T]he ultimate weighing and balancing that makes up the decision whether to issue a preliminary injunction is highly discretionary [and] given substantial deference." *A.J. Canfield Co. v. Vess Beverages, Inc.,* 796 F.2d 903, 906 (7th Cir.1986); *Lawson Products, Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1437 (7th Cir.1986). Our role is limited to determining "whether the judge exceeded the bounds of permissible choice in the circumstances, not what we would have done if we had been in his shoes." *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 390 (7th Cir.1984).

■ The discretion exercised by the district judge is measured against several prerequisites:

1) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; 2) the threatened injury to plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; 3) the plaintiffs have at least a reasonable likelihood of success on the merits; and 4) the granting of a preliminary injunction will not disserve the public interest.

*Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Products, Inc.,* 545 F.2d 1096, 1097 (7th Cir.1976). Of these factors, the likelihood of success generally weighs most heavily in a court's calculus. As this circuit concluded in *O'Connor v. Board of*

*Education,* 645 F.2d 578, 580 (7th Cir.), *cert. denied,* 454 U.S. 1084, 102 S.Ct. 641, 70 L.Ed.2d 619 (1981), "The likelihood of success serves as a threshold requirement. ... [I]f this factor is unsatisfied, and if the plaintiff has not shown irreparable injury, the court need go no further in denying the preliminary injunction." A successful showing of a likelihood of success is strong evidence an injunction should issue. *See Roland Machinery Co. v. Dresser Industries,* 749 F.2d at 387 ("The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor.").

### II.

■ The party seeking a preliminary injunction has the burden of establishing, with reasonable certainty, that he will succeed at the final hearing. *American Hospital Association v. Harris,* 625 F.2d 1328, 1331 (7th Cir.1980). The district court found it likely that in a hearing on the merits plaintiffs would succeed in their challenge to D.R. 2–103.

The Supreme Court first extended limited protection to commercial speech in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Soon after, the Court considered whether constitutional protection should extend to certain forms of attorney advertising. In *Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), the Court addressed whether Arizona could bar a lawyer from using newspapers to advertise his prices for routine legal services. The Court rejected the state's arguments that price advertising reflects upon lawyers' professionalism, encourages unnecessary litigation, is inherently misleading, contributes to rising legal costs, leads to shoddy work and is difficult to regulate. The public's strong interest in receiving information through advertising, the Court found, made a ban unjustifiable:

Advertising, though entirely commercial, may often convey information of import

to significant issues of the day. And commercial speech serves to inform the public of the availability, nature and prices of products and services, and thus performs an indispensable role in the allocation of resources in a free enterprise system. In short, such speech serves individual and societal interests in assuring informed and reliable decisionmaking.

433 U.S. at 364 97 S.Ct. at 2699 (citations omitted).

While a blanket ban on attorney advertising is unacceptable, the *Bates* Court acknowledged that the state retains a strong interest in regulating the advertising of licensed professionals. The Court recognized that, "Advertising that is false, deceptive, or misleading of course is subject to restraint," 433 U.S. at 383, 97 S.Ct. at 2709, and added "We do not foreclose the possibility that some limited supplementation, by way of warning or disclaimer or the like, might be required ... so as to assure that the consumer is not misled." *Id.* at 384, 97 S.Ct. at 2709. *See also In re Primus,* 436 U.S. 412, 438, 98 S.Ct. 1893, 1908, 56 L.Ed.2d 417 (1978) ("The State's special interest in regulating members of a profession it licenses, and who serve as officers of its courts, amply justifies the application of narrowly drawn rules to proscribe solicitation that in fact is misleading, overbearing, or involves other features of deception or improper influence.").

In *Ohralik v. Ohio State Bar Association,* 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978), the Court considered the constitutionality of Ohio's suspension of an attorney for improper solicitation. The attorney had gone to the hospital to visit the 18–year old victim of an auto accident and had convinced her to sign a contingency fee agreement. He had also contacted a second victim of the accident after she was released from the hospital and persuaded her to agree to a contingency fee arrangement. In upholding the state's action, the Court noted that in-person solicitation was qualitatively different from the newspaper advertising considered in *Bates:*

Unlike a public advertisement, which simply provides information and leaves the recipient free to act upon it or not, in-person solicitation may exert pressure and often demands an immediate response, without providing an opportunity for comparison or reflection. The aim and effect of in-person solicitation may be to provide a one-sided presentation and to encourage speedy and perhaps uninformed decisionmaking; there is no opportunity for intervention or counter-education by agencies of the Bar, supervisory authorities, or persons close to the solicited individual.

436 U.S. at 457, 98 S.Ct. at 1919 (footnote omitted).

The Court recognized that individuals contacted in person might be especially susceptible to an attorney's pressures:

Although it is argued that personal solicitation is valuable because it may apprise a victim of misfortune of his legal rights, the very plight of that person not only makes him more vulnerable to influence but also may make advice all the more intrusive.

*Id.* at 465, 98 S.Ct. at 1923. Additionally, in-person solicitation is not easily subject to state regulation. *See id.* at 466, 98 S.Ct. at 1923 ("in-person solicitation is not visible or otherwise open to public scrutiny"). *Ohralik* is the only recent Supreme Court case to bar a form of attorney advertising.

The protection for attorney advertising was extended to certain forms of direct mailing in *In re R.M.J.,* 455 U.S. 191, 102 S.Ct. 929, 71 L.Ed.2d 64 (1982). That case considered a Missouri regulation that restricted lawyer print advertising to certain categories and restrained the mailing of attorney announcement cards. The Court dismissed the state's concerns that direct mailing would be subject to abuse. The Court held, "the States may not place an absolute prohibition on certain types of potentially misleading information, *e.g.,* a listing of areas of practice, if the information may also be presented in a way that is not

deceptive." *Id.* at 203, 102 S.Ct. at 937. The Court noted that the state's interests could be served by restrictions less rigid than a complete ban.

In *Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985), the Supreme Court struck down restraints on certain forms of targeted advertising. There, the state sought to prohibit all newspaper advertising directed at users of the Dalkon Shield Intrauterine Device. The advertisement in question informed users that they may have a cause of action and offered Zauderer's services as an attorney with experience in Dalkon Shield litigation. The Court noted that the information in the advertisement was entirely accurate. It thus concluded, "The State's power to prohibit advertising that is 'inherently misleading' thus cannot justify Ohio's decision to discipline appellant for running advertising geared to persons with a specific legal problem." *Id.* at 2277 (citation omitted). The Court also rejected the state's argument that targeted advertising invaded individuals' privacy or stirred up frivolous litigation. It therefore held, "An attorney may not be disciplined for soliciting legal business through printed advertising containing truthful and nondeceptive information and advice regarding the legal rights of potential clients." *Id.* at 2280.

The Supreme Court has yet to speak to the constitutionality of prohibitions of direct mailings targeted at individuals with specific problems. Other courts, however, have found similar restraints on targeted direct mailing to be unconstitutional. *See Spencer v. Honorable Justices of the Supreme Court,* 579 F.Supp. 880, 891 (E.D. Pa.1984), *aff'd,* 760 F.2d 261 (3d Cir.1985); *In re Von Wiegen,* 63 N.Y.2d 163, 481 N.Y.S.2d 40, 470 N.E.2d 838 (1984) (state ban on mail solicitation of accident victims unconstitutional); *Kentucky Bar Association v. Stuart,* 568 S.W.2d 933, 934 (Ky. 1978). The ARDC argues that because the information contained in targeted direct mailings reaches vulnerable individuals and may be incomplete or erroneous such mailings are more like the in-person solicitation

banned in *Ohralik* than the targeted newspaper advertising upheld in *Zauderer.* We disagree.

Prohibiting direct mailings to those who might most desire and might most benefit from an attorney's services runs afoul of the concerns for an informed citizenry that lay at the heart of *Bates. See Spencer v. Honorable Justices of the Supreme Court,* 579 F.Supp. at 891. *Bates* was decided, in part, because many members of the public were unaware of available legal services:

> The absence of advertising may be seen to reflect the profession's failure to reach out and serve the community: Studies reveal that many persons do not obtain counsel even when they perceive a need because of the feared price of services or because of an inability to locate a competent attorney.

433 U.S. at 370, 97 S.Ct. at 2702 (footnotes omitted). *See also Zauderer,* 105 S.Ct. at 2279 n. 12 ("the State is not entitled to prejudge the merits of its citizens' claims by choking off access to information that may be useful to its citizens in deciding whether to press those claims in court").

■ While the interest of the targeted audience in receiving the information is strong, the state concerns that underscored the Court's decision in *Ohralik* are less pressing with targeted mailings than with in-person solicitation. In this connection, individuals are less subject to harassment, overreaching and duress through mailings than they are through direct personal contact. It is easier to throw out unwanted mail than an uninvited guest. A letter may be read through several times and its contents reflected upon before a decision is made. As the Court stated in *Zauderer,* 105 S.Ct. at 2277, "[I]n most cases, [print advertising] will lack the coercive force of the personal presence of a trained advocate. In addition, a printed advertisement, unlike a personal encounter initiated by an attorney, is not likely to involve pressure on the potential client for a yes-or-no answer to the offer of representation." And, since targeted mailings may be presented in an

honest and accurate manner, the fact that certain mailings may be erroneous or incomplete does not justify a ban on all mailings. *See id.; In re R.M.J.,* 455 U.S. at 203, 102 S.Ct. at 937.

Printed direct mailings are also more easily policed than in-person solicitations. As the Court found in *In re Primus,* 436 U.S. 412, 435–36, 98 S.Ct. 1893, 56 L.Ed.2d 417 (1978), "the fact that there was a written communication lessens substantially the difficulty of policing solicitation practices that do offend valid rules of professional conduct." While it may be difficult to establish with certainty what conversation took place between an attorney making an in-person solicitation and his potential client, a letter provides tangible evidence of what information was received through direct mailing.

 Undeniably, the state retains a strong interest in protecting the public against misleading targeted direct mailings. However, there are ways of achieving this goal more narrowly than a direct ban. Of course, all misleading advertising may be banned.[3] *See Bates v. State Bar of Arizona,* 433 U.S. at 383, 97 S.Ct. at 2708. To protect against consumer confusion, the state may require that targeted direct mailings be labeled as advertising. *Id.* at 384, 97 S.Ct. at 2709. Similarly, the state can facilitate its policing of such advertising by requiring that copies of direct mailings be filed with the ARDC. *See In re R.M.J.,* 455 U.S. at 206, 102 S.Ct. at 939.

Because the ARDC's prohibition sweeps too broadly and affects important individual interests, it is highly likely that it would not withstand constitutional review.

### III.

 The determination that it is very likely that plaintiffs would succeed on the merits weighs heavily in favor of the issuance of a preliminary injunction. Besides finding that plaintiffs had demonstrated a likelihood of success, the district

court found they had satisfied the other requirements for an injunction as well:

> They are faced with a threat of prosecution by defendants, with a harm to their professional standing and reputation which cannot be remedied by money damages, and with a harm that outweighs the harm to defendants of being prevented from enforcing their rule.

*Adams v. ARDC,* 617 F.Supp. 449, 455 (N.D.Ill.1985).

The ARDC argues that the court based its award of extraordinary relief on erroneous findings. It contends that plaintiffs made no showing that they are threatened with injury that is imminent, substantial, and not remediable in law, as is required. *See American Dairy Queen v. Brown-Port Co.,* 621 F.2d 255, 258 (7th Cir.1980). It argues that plaintiffs are faced with no injury because the ARDC has agreed to preserve the status quo pending a final resolution on the merits.

 In proceedings before the district judge, the ARDC did agree not to institute any proceedings against plaintiffs pending the disposition of the suit. Transcript of Proceedings in Case No. 84 C 3548, May 9, 1984 at 13. However, the district judge found that plaintiffs' professional standing and reputation were threatened. While we might have weighed the evidence differently, the district judge's findings are entitled to great deference. *See Roland Machinery Co. v. Dresser Industries,* 749 F.2d at 390. Especially in light of the very great likelihood of plaintiffs' success on the merits, we cannot say that the district judge acted erroneously. Moreover, the public interest in receiving the information D.R. 2–103 would bar is very great. *See Bates,* 433 U.S. at 364, 97 S.Ct. at 2699. By contrast, while the ARDC maintains a broad interest in regulating targeted attorney advertising, its objectives may be accomplished by means less restrictive than an absolute ban. Thus we cannot say the

---

**3.** The court below indicated that certain individual representations made in the direct mailings at issue here might be misleading and therefore

subject to regulation even if a direct ban were impermissible. *See Adams v. ARDC,* 617 F.Supp. 449, 454 n. 2 (N.D.Ill.1985).

harm posed to the ARDC by the injunction outweighs plaintiffs' and the public's interests.

The judgment of the district court is therefore AFFIRMED.