**Miriam benSHALOM, Plaintiff,**

v.

**John O. MARSH, Jr., Secretary of the U.S. Army; Commanding Officer H.Q., 84th Division, US Army Reserve; commanding officer 5091st U.S. Army Reception Battalion, Defendants.**

No. 88–C–468.

United States District Court,
E.D. Wisconsin.

Aug. 3, 1988.

Angermeier & Rogers by Patrick T. Berigan, Milwaukee, Wis., for plaintiff.

Kenneth C. Kohl, Dept. of Justice, Civ. Div., Washington, D.C., for defendants.

## DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

Sergeant Miriam benShalom has filed this action seeking to have declared as unconstitutional the Army Reserve Regulations, AR 140–111, Table 4–2, that bar reenlistment to any serviceperson who declares himself or herself to have a homosexual orientation. Sergeant benShalom is a self-declared lesbian who, on the basis of that declaration, has been denied reenlistment by the Army Reserves. Her current enlistment contract expires on August 11, 1988. In an effort to preserve the status quo pending resolution of her action, Sergeant benShalom has moved for a preliminary injunction. For the reasons stated herein, I will grant the motion.

The facts are uncontested. Sergeant benShalom has an exemplary military record; having received high training scores and been honored with special recognition at graduation ceremonies from a so-called "Leadership School." She has on a number of occasions acknowledged that she is a lesbian. However, there are no allegations that Sergeant benShalom has ever engaged in any prohibited acts of homosexual conduct. The Army has denied

Sergeant benShalom reenlistment exclusively on the basis of her acknowledged status as a person of homosexual orientation. Army Reserve Regulations AR 140–111, Table 4–2, makes the status of homosexuality a non-waivable disqualification to reenlistment. Impermissible homosexuality is defined so as to include "an individual who is an admitted homosexual but as to whom there is no evidence that they have engaged in homosexual acts either before or during military service". Rule E, Table 4–2, AR140–111.

The district court's exercise of discretion in the issuance of a preliminary injunction is guided by four factors: 1) whether the movant has an adequate remedy at law such that she will suffer irreparable harm if the preliminary injunction is denied; 2) whether the harm to the movant outweighs the harm to the opposing party if the injunction issues; 3) whether the movant has a reasonable likelihood of success on the merits; and 4) whether the granting of a preliminary injunction will disserve the public interest. *Adams v. Attorney Registration and Disciplinary Commission*, 801 F.2d 968, 971 (7th Cir.1986). The application of these four factors has been described as a judicial effort to minimize errors:

> [T]he error of denying an injunction to one who will in fact (though no one can know this for sure) go on to win the case on the merits, and the error of granting an injunction to one who will go on to lose. The judge must try to avoid the error that is more costly in the circumstances."

*Roland Machinery Co. v. Dresser Industries*, 749 F.2d 380, 388 (7th Cir.1984).

The "likelihood of success on the merits" factor is generally considered a "threshold requirement." *Adams, supra*, 801 F.2d at 971. Sergeant benShalom has asserted that both her first and fifth amendment rights will be violated if she is denied reenlistment simply as a result of statements she has made acknowledging her homosexual orientation. In the opinion of this court, Sergeant benShalom has made out a more than colorable claim on both her first

and fifth amendment grounds and has thus satisfied this requirement.

■ The Army argues that the entire complaint is nonjusticiable because "questions concerning the proper composition of the Armed Forces are best left to military professionals." Judges are indeed reluctant to interfere with the military's exercise of discretion in the administration of its personnel matters. *Mindes v. Seaman*, 453 F.2d 197 (5th Cir.1971); *Pauls v. Secretary of Air Force*, 457 F.2d 294 (1st Cir. 1972). However, a court must not refuse to review a case in which it appears that the military may have violated the constitutional rights of the plaintiff. *benShalom v. Secretary of Army*, 489 F.Supp. 964, 971 (E.D.Wis.1980).

■ In 1976, Sergeant benShalom was discharged from the Army Reserves because she made statements that she was a lesbian. In 1980 it was held that the Army Reserve regulations which authorized that discharge violated her first amendment rights of free speech and association. *benShalom v. Secretary of Army*, 489 F.Supp. at 973, 974.

The uncontested factual situation today is very similar to that of 1980. The only real differences are the rewording of the regulations at issue and the fact that Sergeant benShalom is being denied reenlistment instead of being discharged. The defendants contend that the current regulations do not infringe upon servicemembers' first amendment associational rights, and therefore the 1980 holding is not applicable to this case. However, the fact remains that in 1980 the court ruled that the plaintiff's free speech rights had been violated by her discharge for statements that she had made about her sexual orientation, and today she is being denied reenlistment for those same statements.

As late as August 1987, seven years after the Army was ordered to reinstate the plaintiff, the Army resisted the reinstatement on the grounds that the original regulations under which the plaintiff had been discharged had been reworded. In ordering the Army finally to reinstate the plaintiff, the court of appeals for the seventh circuit stated:

> When benShalom is returned to the Army, the Army is prohibited from discriminating against her because she professes to be a lesbian.... A change in the Army regulations, which the Secretary now claims would prohibit benShalom from serving in the Reserves, cannot alter the right of benShalom which was established in Judge Evans' 1980 opinion.

*benShalom v. Secretary of Army*, 826 F.2d 722, 724 (7th Cir.1987).

Based on the foregoing, I conclude that the plaintiff has met her burden in establishing a reasonable likelihood of success on the merits of her first amendment claim.

Sergeant benShalom's fifth amendment equal protection claim presents this court with a more novel question of law not yet specifically resolved in this circuit. The issue is whether homosexuals, defined by the *status* of having a particular sexual orientation and absent any allegations of sexual *misconduct*, constitute a suspect class. The divergence in case law on this issue is demonstrated by the contrast in approach between the courts of appeals for the D.C. circuit and the ninth circuit.

In *Padula v. Webster*, 822 F.2d 97 (D.C. Cir.1987), the court held that homosexuals do not constitute a suspect class in part because it believed that the Supreme Court's decision in *Bowes v. Hardwick*, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), foreclosed such a result. In *Bowes*, the Supreme Court upheld as constitutional a Georgia law criminalizing sodomy. The court reasoned that "[i]t would be quite anomalous, on its face, to declare status defined by conduct that states may constitutionally criminalize as deserving of strict scrutiny under the equal protection clause." *Padula, supra*, 822 F.2d at 103. Thus the court of appeals for the D.C. circuit treated the classification of homosexuality as including those persons who engage in sodomy, and no distinction was drawn between status and conduct.

By contrast, in *Watkins v. U.S. Army*, 837 F.2d 1428 (9th Cir.1988), reh. granted 847 F.2d 1362 (9th Cir. June 8, 1988), the

court decided that the status of homosexuality did constitute a suspect classification. In that case, under facts similar to those in the instant case, the court considered the various factors that the Supreme Court has used to define the characteristics of a suspect class. These included whether the class has suffered a history of purposeful discrimination; whether the class is defined by a trait that bears no relationship to an individual's ability to perform or contribute to society; whether the trait defining the class is immutable; and finally, whether the class is a discrete group subject to prejudicial majoritarian political power.

In 1980 Judge Evans held that

"the record is clear that [benShalom's] sexual preferences made no difference to her immediate supervisors or her students. The court is satisfied from the record that her sexual preferences had as much relevance to her military skills as did her gender or the color of her skin."

*benShalom, supra,* 489 F.Supp. at 974.

This finding by Judge Evans and the fact that the plaintiff's exemplary military record has continued to be unaffected by her sexual preference, lead me to conclude that the plaintiff has demonstrated at least a reasonable likelihood of establishing that the mere status (as opposed to actual conduct) of homosexuality is a trait that bears no relationship to an individual's ability to perform or contribute to the military. Similarly, the Army regulations barring reenlistment to those having the status of homosexuality provide support for the applicability of other indicia of suspectness such as that of purposeful discrimination. Whether or not the plaintiff has a reasonable likelihood of success in establishing homosexuality as a suspect class depends on the viability of the distinction between status and conduct. The Army, taking the *Padula* approach, would have this court conclude that homosexuals are those "who engage, have engaged, or likely will engage, in sexual conduct that Congress has criminalized [sodomy]". In that regard, Judge Evans concluded in 1980 that:

Just as some heterosexuals have, throughout human history, chosen to forego sexual activity for a variety of reasons, it cannot be assumed that all who have personalities oriented toward homosexuality necessarily engage in homosexual conduct.

*benShalom, supra,* 489 F.Supp. at 975.

At this early stage of proceedings, the Army has offered the court no basis to support its implicit fear that Sergeant benShalom (because of her acknowledged *status*) is likely to engage in criminal sexual *conduct;* in fact the record today, as in 1980, remains completely devoid of any conduct allegations.

Even if the status-conduct distinction is insufficient to support the establishment of the status of homosexuality as a suspect classification, the plaintiff has demonstrated a reasonable likelihood of success under the more traditional deferential standard. Under this standard the issue is whether the challenged distinction rationally furthers some legitimate, articulated state purpose. *McGinnis v. Royster,* 410 U.S. 263, 270, 93 S.Ct. 1055, 1059–60, 35 L.Ed.2d 282 (1972). Does an Army regulation which distinguishes military personnel on the basis of their sexual orientation rationally advance some articulated military purpose? The Army has expressed a number of such purposes: maintenance of discipline, fostering trust among personnel, integrity of the system of rank and command, ease of deployment often under conditions of little privacy, recruitment and retention, maintenance of public acceptability of the Army, and prevention of breaches of security.

While each of these ends is certainly legitimate, the issue is whether any is rationally furthered by the regulation in question. The uncontested facts in this case would seem to indicate that Sergeant benShalom has been an exemplary soldier who has the respect of her peers and superiors. The ends which the Army purports to protect by denying the plaintiff reenlistment would not seem rationally served by her elimination from the ranks. Unless such a rational relationship can be estab-

lished it would appear that Sergeant ben-Shalom has a reasonable likelihood of success on the merits, even under a standard of deferential scrutiny.

As to the remaining factors, the court of appeals for the seventh circuit has held that once the movant has demonstrated the likelihood of success on the merits, "the less heavily need the balance of harms weigh in [her] favor." *Roland Machinery Co. v. Dresser Industries,* 749 F.2d 380, 387 (7th Cir.1984). The plaintiff has cogently pleaded both tangible and intangible harms if she is discharged without being allowed to reenlist. These include the loss of her first and fifth amendment rights. "The loss of First Amendment freedoms, for even minimal period of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 349, 373, 96 S.Ct. 2673, 2678, 2690, 49 L.Ed.2d 547 (1975); *see also, Oshiven v. Court of Common Pleas,* 469 F.Supp. 645, 654 (E.D.Pa. 1979); *Jessen v. Village of Lyndon Station,* 519 F.Supp. 1183, 1189 (W.D.Wis. 1981); *Greater Baltimore Board of Realtors v. Hughes,* 596 F.Supp. 906, 924 (D.Md.1984).

The Army on the other hand asserts that it will suffer irreparable harm if an injunction issues; that an injunction would "seriously undermine the the Army's fundamental authority to determine for itself the proper composition of the armed forces"; that each of the legitimate purposes mentioned above would be adversely affected; in addition, the Army asserts that the publicity that would accompany an injunction would negatively affect morale and recruitment prospects. These "harms" seem speculative at best and fly in the face of the undisputed facts. There is no allegation that Sergeant benShalom's highly publicized current enlistment term has generated any such harms.

Finally, the public interest is not disserved by the maintenance of the status quo pending the resolution of this case on the merits. Clearly, the plaintiff has car-

ried her burden on each of the four requirements for a preliminary injunction.

Therefore, IT IS ORDERED that the plaintiff's motion for a preliminary injunction pursuant to Rule 65, Federal Rules of Civil Procedure, be and hereby is granted.

IT IS ALSO ORDERED that the defendants be and hereby are directed to consider Sergeant benShalom's reenlistment request without regard to her sexual orientation until further order of the court.