OPINION OF THE COURT
Simons, J.
This is a lawyer disciplinary proceeding which has resulted in respondent’s suspension from the practice of law for six months because he solicited by mail the victims and families of the 250 persons injured when the sky-walk collapsed at the Hyatt Regency Hotel in Kansas City, Missouri, in July, 1981, he did so by letters that were false and misleading and because, in unrelated advertising, he used a trade name. Respondent contends that the prohibition of direct mail solicitation abridges his constitutional right to free speech (Bates v State Bar ofAriz., 433 US 350; Matter of Koffler, 51 NY2d 140; see, generally, Note, Direct *167 Mail Solicitation by Attorneys: Bates to R. M. J. 33 Syracuse L Rev 1041; Goldblum, Regulation of Lawyer Advertising in New York, 56 NYSBJ, No. 4, May, 1984, p 6), that the evidence before the referee did not establish deception, that the motto he used did not constitute a trade name and that the penalty was excessive.
Respondent graduated from law school in 1974, was admitted to the Michigan Bar and practiced law there for approximately six years before moving to New York. In 1980 he was admitted to practice in this State and he presently maintains his law office in Schenectady. His practice consists principally of personal injury cases.
On April 20,1982 petitioner, Committee on Professional Standards, Third Judicial Department, commenced a disciplinary proceeding against respondent by filing charges alleging that he, in violation of section 479 of the Judiciary Law and the Code of Professional Responsibility, (I) engaged in direct mail solicitation of the victims and/or their families of the Hyatt Regency Hotel disaster in Kansas City, Missouri (DR 2-103 [A], [C], [E]); (II) employed deception and misrepresentation in the letters sent to the accident victims by indicating that a litigation coordinating committee had been formed to assist the victims and that many victims or their families had retained respondent (DR 1-102 [A] [4], [6]; DR 2-101 [A], [B]); and (III), in an unrelated incident, hired two persons to place flyers advertising respondent’s services on automobile windshields in a shopping mall in Schenectady which contained misleading statements and a prohibited trade name — “The Country Lawyer” (DR 2-101 [A], [C], [E]; DR 2-102 [A], [B]). (The letters and the flyer are annexed as an appendix to this opinion.) After a hearing the referee rejected charges I and III in their entirety and sustained charge II insofar as it alleged that the references in the solicitation letter to a committee and to the fact that many victims had retained respondent were misleading.[1] The referee rejected charge I, concluding that under this court’s ruling in Matter of *168 Koffler (51 NY2d 140, supra), respondent’s solicitation could be regulated but not proscribed by statute or disciplinary rule.
The Appellate Division confirmed the referee’s report with respect to the finding of deception contained in charge II, confirmed portions of charge III,[2] and otherwise disaffirmed it. In sustaining charge I, the Appellate Division ruled that a prohibition on direct mail solicitation of accident victims constituted a restriction on the time, place and manner of speech, rather than its content (see Matter of Greene, 54 NY2d 118,120-121, cert den sub nom. Greene v Grievance Committee, 455 US 1035), and noted that such a restriction is supportable if reasonable and related to a substantial State interest (citing Matter of R. M. J., 455 US 191). The court found the ban permissible here because it “related to and supports a variety of substantial State interests, including avoidance of the demoralizing effect such solicitation might have on the profession and the unseemly rivalry reminiscent of ‘ambulance chasing’ it might generate * * * avoidance of stirring up litigation and vexatious conduct * * * and prevention of invasions of privacy” [citations omitted] (101 AD2d 627, 628). Addressing charge II, the court found that proof adduced at the hearing established by a fair preponderance of the evidence that two statements in the letters were deceptive and misleading. In sustaining the trade name count of charge III, it concluded that the use of the phrase “The Country Lawyer” in the flyers violated DR 2-102 (B). The court suspended respondent from the practice of law for six months.
 We agree generally with the determinations of the referee and we therefore modify the order of the Appellate Division by dismissing charges I and III and by affirming the determination on charge II.
I
The primary issue on appeal concerns respondent’s right to solicit accident victims by mail. It can be analyzed in two *169 ways, by comparing the cases principally relied on by the Appellate Division and the referee and also by employing a structured constitutional analysis (see Central Hudson Gas & Elec, v Public Serv. Comm., 447 US 557, 565) as we did in Koffler.
The Appellate Division, in sustaining charge I and banning direct mail advertising in personal injury cases, relied on Ohralik v Ohio State Bar Assn. (436 US 447). In Ohralik the Supreme Court held that the potential for fraud, undue influence, intimidation, overreaching, and other forms of vexatious conduct was so likely in the context of in-person solicitation of accident victims that a ban on such conduct was constitutionally justified. In Matter of Koffler (51 NY2d 140, supra), however, we found most of those concerns absent in the direct mail solicitation of real estate clients and held that the mail solicitation employed in that case was constitutionally protected commercial speech which the State may regulate but not proscribe. The question before us now is whether respondent’s solicitation of accident victims and their families by mail implicates the substantial State interests identified in Ohralik (436 US 447, 462, supra) in a way which distinguishes it from Matter of Koffler and justifies proscription of such mailings.[3] Stated another way, is there something unique about lawyer mailings to accident victims as distinguished from similar mailings to prospective real estate clients which requires a result different from that reached in the Koffler case? From its analysis of Ohralik, the Appellate Division concluded that there was, that mail solicitation of accident victims was similar to in-person solicitation of them and posed a significant threat to the victims’ ability to reach a reasoned and informed decision regarding the need for legal representation. That determination suggests that the validity of mailing restrictions depends upon the nature of the legal problem involved, whether it concerns torts or real estate, or some other area of the law.
*170 We view the present case as closer to Koffler, basing our decision on the distinction between mail solicitation and in-person solicitation of accident victims because the latter permits the exertion of subtle pressure and often demands an immediate response without providing an opportunity for comparison and reflection. The Supreme Court’s decision in Ohralik was based on those factors, the elements of intimidation and duress (see Ohralik, 436 US 447, 462-463, 464-466, supra). They are not present in the case of mail solicitation and, as with the real estate client in Koffler, the process of decision-making may actually be aided by information contained in the mailing. For the reasons which follow, we find the restriction here is not related to the time, place and manner of expression but is content-based, and employing the analysis set forth by the Supreme Court in Central Hudson Gas & Elec, v Public Serv. Comm. (447 US 557, 566, supra), we hold the blanket prohibition of mail solicitation of accident victims violates respondent’s rights of expression under the First and Fourteenth Amendments of the United States Constitution.
It is now familiar law that the Constitution protects from unwarranted governmental regulation, commercial expression, i.e., expression which relates solely to the economic interests of the speaker and his audience, because commercial expression not only serves the economic interest of the speaker but furthers a societal interest in the fullest possible dissemination of information (Central Hudson Gas & Elec, v Public Serv. Comm., 447 US 557, 561-562, supra; Virginia Pharmacy Bd. v Virginia Consumer Council, 425 US 748, 762; Bates v State Bar of Ariz., 433 US 350, 363-364, supra; see, also, Tribe, American Constitutional Law, § 12-15, pp 651-656). It is subject to a lesser degree of protection than other traditionally protected types of speech but it does, nevertheless, come within the ambit of the First and Fourteenth Amendments (Ohralik v Ohio State Bar Assn., 436 US 447, 455-456, supra). Lawyer advertising represents commercial expression (Bates v State Bar of Ariz., supra). Thus, although the State, through its professional disciplinary committees, possesses broad power to regulate the legal profession because lawyers are essential to the primary governmental *171 function of administering justice and because they are officers of the court (Matter of Primus, 436 US 412, 422; Goldfarb v Virginia State Bar, 421 US 773, 792), the recognition that lawyer advertising is a form of commercial speech subject to First Amendment protection requires the courts to eschew blanket prohibitions of solicitation and to assess the validity of the regulation by carefully balancing the First Amendment interest at stake with the public interest allegedly served by the regulation. Categorizing the conduct as advertising or solicitation is of little help in that analysis (see Bigelow v Virginia, 421 US 809, 826; Matter of Koffler, 51 NY2d 140, 146-147, supra). Although some authorities have suggested that the degree of regulation permitted for commercial speech depends upon the type of speech involved, i.e., whether it contains explicit product and price information or less substantive matters (see Nowak-Rotunda-Young, Constitutional Law [2d ed], p 941), generally the degree of regulation permitted depends, as it does in all First Amendment cases, on the nature of the restriction, i.e., whether it is a restriction of the time, place and manner of expression (see Consolidated Edison Co. v Public Serv. Comm., 447 US 530, 536; Linmark Assoc, v Willingboro, 431 US 85, 93) or of its subject matter or content (see Erznoznik v City of Jacksonville, 422 US 205) or whether the restriction is acceptable because it is narrowly tailored to serve a compelling State interest (see, e.g., Lehman v City of Shaker Hgts., 418 US 298; Kovacs v Cooper, 336 US 77). On this appeal we are concerned with mail solicitation dealing principally with fees and available services and whether the restriction concerns the time, place and manner of solicitation or the subject matter of the mailing.
The State is permitted considerably more latitude in restricting the time, place and manner of speech than it is when it attempts to restrict content. Time, place and manner restriction are valid if reasonable and rationally related to legitimate State interests. Content or subject matter may be regulated only if substantial State interests are involved and then the regulation may go no further than necessary to serve that interest.
To be considered a time, place and manner restriction, the restriction must be “applicable to all speech irrespec *172 tive of content” (Erznoznik v City of Jacksonville, 422 US 205, 209, supra; see, also, Consolidated Edison Co. v Public Serv. Comm., 447 US 530, supra). The government may determine how, when or where speech is permitted, but it may only do so without reference to the subject matter or content of the speech. Thus, for example, the government may regulate large street demonstrations because held at rush hour or because amplifiers are used if the regulations are neutral in terms of content (see Grayned v City of Rockford, 408 US 104; Cox v New Hampshire, 312 US 569). It may not, however, prohibit the display of movies visible from a public street when the restrictions apply only to movies containing nudity (Erznoznik v City of Jacksonville, supra).
The Appellate Division, citing Matter of Greene (54 NY2d 118, supra), concluded that prohibition of direct mail solicitation of accident victims regulated the time, place and manner of speech because it focused upon the recipient group rather than the subject matter of the speech. Matter of Greene is distinguishable, however. That decision held that, to the extent section 479 of the Judiciary Law and DR 2-103 (A) of the Code of Professional Responsibility proscribes advertising of attorney’s services by direct mail addressed to real estate brokers, those provisions are a constitutionally valid time, place and manner regulation of commercial speech (54 NY2d, at pp 120-121). A time, place and manner regulation was present because the proscription did not concern the content of the attorney’s letter, i.e., making known to potential clients the availability of his services for real estate matters, but only prohibited the attorney from advertising in a particular manner — through a third party whose interests gave rise to potential conflicts of interest (Matter of Greene, supra, at pp 126-127). Here, the State seeks to regulate respondent’s letter, not because of the involvement of third parties, but because of the subject matter of the communication — the fact that respondent seeks to be retained to represent accident victims and their families. As such, the regulation is plainly content-based (see Bolger v Youngs Drug Prods., 463 US 60; Consolidated Edison Co. v Public Serv. Comm., 447 US 530, 536, supra; Erznoznik v City of Jacksonville, 422 US 205,209, supra; Cox v Louisiana, 379 US 536,554).
*173 Content-based restrictions are judged by a structured four-part analysis (Central Hudson Gas & Elec. v Public Serv. Comm., supra, at pp 557, 566; see, also, Matter of Koffler, 51 NY2d 140,147, supra). The court must consider (1) whether the communication is outside the scope of constitutional protection — i.e., is it misleading or related to unlawful activity? (2) whether the government interests sought to be protected are substantial? (3) how directly the regulation advances those interests? and (4) whether there is a less restrictive alternative?
(1) Is the Communication outside the scope of Constitutional Protection? There is no constitutional right to disseminate false or misleading information or information about unlawful activity (Central Hudson Gas & Elec. v Public Serv. Comm., supra, at p 563). Petitioner contends, therefore, that permitting respondent to solicit business by mail notwithstanding the determination of the referee and the Appellate Division that portions of the communication were misleading, deprives it of its recognized power to prevent deceptive advertising. Our inquiry, however, is whether a particular method of advertising is inherently misleading. If a certain type of information can be presented in a way that is not deceptive, a State may not absolutely prohibit the method used because it is sometimes used to disseminate misleading information (Matter of R. M. J., 455 US 191, 203, supra). Direct mail solicitation of accident victims is not inherently misleading nor is there a history that the practice has led to abuses. Thus, because information on the availability of legal services for accident victims may be communicated in a fair and understandable fashion, absolute prohibition is unwarranted (see, e.g., Matter of Appert, 315 NW2d 204 [Minn]).
(2) What Substantial Governmental Interests are Protected? At least four governmental interests can be identified in support of the outright ban on mail solicitation of accident victims: overcommercialization of the profession and the potential for “ambulance chasing”; invasion of privacy and the possibility of undue pressure; stirring up litigation; and the potential for deception.
The Appellate Division attempted to justify a ban on direct mail solicitation of accident victims as a measure *174 necessary to prevent overcommercialization and the potential for practices reminiscent of “ambulance chasing”. In Matter of Koffler (51 NY2d, at p 149), we noted that overcommercialization is now controlled by the advertising standards set forth in DR 2-101. While lawyer advertising may appear unseemly to many members of the profession, particularly where, as here, it is directed at the unfortunate victims of a disaster or their families, it is constitutionally protected and serves the recognized purpose of informing those in need of the cost and availability of legal services (see Bates v State Bar of Ariz., 433 US 350, 364, supra).
Furthermore, mail solicitation does not constitute a substantial invasion of privacy or present a risk of undue pressure. The simple answer to the claim that it does is that the recipient of a lawyer’s letter “may escape exposure to objectionable material simply by transferring [it] from envelope to wastebasket” (Consolidated Edison Co. v Public Serv. Comm., 447 US 530, 542, supra; Matter of Koffler, 51 NY2d 140,149, supra). Nor is avoidance of the intrusion more difficult because the families of accident victims and the victims themselves may be emotionally upset when they receive a solicitation letter. As we noted in Koffler, it is riot enough to justify a ban upon solicitation that in some situations, such as marital discord or a death in the family, the letter might be offensive (supra, at p 149). The same observation applies to accident victims and their families.
Unlike Matter of Koffler (supra), however, solicitation in personal injury cases does pose a danger that litigation will be stirred up. Historically, the Government has exhibited its strong interest in regulating this problem by the offenses of champerty and barratry and undoubtedly, frivolous litigation continues to result in unwarranted economic and societal costs today. Regulations which prevent or inhibit the stirring up of unwarranted litigation serve an important public purpose. Thus, the courts properly should limit uninvited communications from an attorney which instigate groundless lawsuits and neither further associational values protected by the First Amendment (see Matter of Primus, 436 US 412, supra) nor aid in the dissemination of truthful information about the availabil *175 ity of legal relief to members of the public in need of such information (cf. Matter of Teichner, 75 Ill 2d 88). In this case, however, the victims and their families had evident need for legal counsel and the mail solicitation of them arguably performed an informational function which the State could not proscribe. As the Supreme Court has said, it is better to address such wrongs than to suffer in silence (see Bates v State Bar of Ariz., 433 US 350, 364, 376, supra).
Finally, the potential for deception present in Matter of Koffler (supra) is also a genuine concern here because these mailings are not subject to the public scrutiny that a newspaper or television advertisement would receive (51 NY2d, at p 149). Moreover, many people may perceive a potentially greater incentive for deception in personal injury litigation than in other types of legal business because greater sums of money may be involved, the nature of the representation may be less routine, contingent fee arrangements may be employed, and because of past abuses in the area. These are serious concerns, but they are concerns which must be addressed whether the solicitation is in person or in writing and the potential for deception is not greater in mail solicitation. Indeed it may reasonably be contended that the use of writing and the filing requirement approved in Koffler helps sanitize statements made in the solicitation of personal injury cases.
(3) and (4) How Directly Does the Regulation Advance the Identified Governmental Interests — Is there a Less Drastic Alternative? A complete ban on the type of solicitation involved here would obviate any danger of deception. However, complete suppression is constitutionally impermissible because the less drastic alternative of filing the letters is present (Matter of Koffler, supra, at p 150).
In sum, the State cannot establish interests of sufficient magnitude to override the public’s interest in receiving information on the availability of legal services and the danger of deception presented by the mailing may be controlled by the filing requirement.
II
Respondent next contends that petitioner failed to present sufficient evidence to support allegations of deception *176 contained in charge II because testimony by recipients of the mailings was necessary before the writing could be found deceptive.
Petitioner was required to establish the charges by a fair preponderance of the evidence (Matter of Capoccia, 59 NY2d 549, 553). It satisfied that burden with respect to charge II by introducing the letters themselves, which, when interpreted in a commonsense manner, contain two deceptive statements: (1) that a litigation coordinating committee had been formed to assist the Hyatt Regency disaster victims; and (2) that many accident victims and/or their families had requested representation by respondent. The first statement is misleading because respondent and his former secretary were the sole members of the committee and the statement implies the existence of an entity independent of respondent. The second statement is deceptive because some, not many, families had contacted him, and none had in fact requested representation.
Respondent disputes these findings by adopting a hyper-technical analysis of the term “committee”, as encompassing an organization with one member, and a liberal interpretation of “some and many” which minimizes any distinction between those two terms. There was ample support in the record for petitioner’s interpretation and there was no need to establish that the letters actually mislead the recipients. It is the potential for deception which is significant (see Ohralik v Ohio State Bar Assn., 436 US 447, 464, supra).
in
Finally, the Appellate Division concluded that the use of the phrase “The Country Lawyer” constituted a violation of the prohibition against use of a trade name contained in DR 2-102 (B).
The purpose of the prohibition against trade names embodied in DR 2-102 (B) is to prevent the public from being deceived about the identity, responsibility and status of those who use the name (Matter of Shannon, 292 Ore 339; cf. Friedman v Rogers, 440 US 1 [use of trade names by optometrists]). The use of the motto “The Country Lawyer” in respondent’s flyer did not deceive in that way *177 because the lawyer’s name was inserted apart from the motto. The case relied upon by the Appellate Division, Matter of Shephard (92 AD2d 978), is distinguishable. In Shephard, the court found that the corporate name “The People’s Law Firm of Jan L. Shephard, Attorney, P.C.” constituted a trade name because it suggested that the firm was controlled by the public, received public funding or provided legal services on a nonprofit basis. No such potential for deception is present in the use of the term, “The Country Lawyer”.
Accordingly, the order of the Appellate Division should be modified by dismissing charge I and charge III and the matter remitted to the Appellate Division, Third Department, for reconsideration of the sanction imposed, and, as so modified, affirmed, without costs.
Chief Judge Cooke and Judges Jasen, Jones, Meyer and Kaye concur; Judge Wachtler taking no part.
Order modified and matter remitted to the Appellate Division, Third Department, for further proceedings in accordance with the opinion herein and, as so modified, affirmed, without costs.

*178

*179

*180

. The referee also found, although there was no charge to the effect, that respondent had violated subdivision (k) of section 806.15 of the department’s rules (22 NYCRR) by failing to include his name on the initial letter sent to the disaster victims. Citing Matter of Doherty (28 AD2d 546), the Appellate Division concluded that the charge could not be sustained because it was not contained in the petition.

. The Appellate Division confirmed the referee’s rejection of petitioner’s objection to the use of caricatures of Abraham Lincoln and George Washington on the flyer, characterizing them as “innocuous drawings”. It also confirmed the referee’s determination that the use of flyers does not, per se, constitute unconstitutional solicitation. The Grievance Committee has not appealed these determinations.

. Only two State cases have been found which addressed the constitutional issues raised by the mail and in-person solicitation of potential tort plaintiffs (see Matter of Appert, 315 NW2d 204 [Minn] [which permitted mail solicitation]; and Matter of Teichner, 75 Ill 2d 88 [which permitted in-person solicitation of accident victims but also involved associational rights]).