OPINION OF THE COURT
Robert F. Julian, J.
The respondent, a convicted felon and in custody of the New York State Department of Correctional Services, is presently residing in the Central New York Psychiatric Center pursuant to an order of commitment made by Honorable John W. Grow on January 26, 2006. On April 4, 2006, the petitioner brought an application to treat the respondent, involuntarily, with anti-psychotic medication. A hearing on this application for forced medication, pursuant to Correction Law § 402 (5), has been requested. The petitioner proposes that the respondent not appear physically at the said hearing, but by way of a video link between the courtroom and the facility where he is housed. The petitioner also proposes that the testimony of at least one of its witnesses also be introduced by video link. The respondent’s instant motion objects to both of these proposals, and requests an order that the respondent be personally present in the courtroom throughout the hearing, and that live video testimony by witnesses be disallowed.
The two issues present separate problems and require separate resolution.
Respondent’s Right to be Present
The State of New York Office of Court Administration has undertaken several pilot projects to conduct hearings pursuant to Correction Law § 402 (5), via video conference technology.[1] The constitutionality and statutory legality of such methods have *499 not been previously addressed, and this court is now required to consider the same.
New York Constitution, article I, § 6 guarantees a civil litigant the right to personally appear at trial and confront witnesses. Specifically, the State Constitution provides: “In any trial in any court whatever the party accused shall be allowed to appear and defend in person and with counsel as in civil actions and shall be informed of the nature and cause of the accusation and be confronted with the witnesses against him or her.” (NY Const, art I, § 6.)
In Matter of Donna K. (132 AD2d 1004, 1004 [4th Dept 1987]), the Appellate Division wrote:
“While every litigant has a fundamental right, guaranteed by the Due Process Clauses of both the Federal and State Constitutions, to be present at every stage of the trial (Matter of Cecelia R., 36 NY2d 317; Matter of Ana Maria Q., 52 AD2d 607), this right is not absolute in civil actions (Matter of Raymond Dean L., 109 AD2d 87, 88).”
The instant matter is complicated by the impossibility of assigning it entirely to either the “criminal” or “civil” category. Although the proceedings are definitionally “civil,” the petitioner acknowledges that “if is recognized that Respondent has a liberty interest at stake in the proceeding and the implementation of video conferencing technology raises serious issues in that regard.”[2] Once a “liberty interest” is at stake, constitutional protections of due process attach. (See Paul v Davis, 424 US 693 [1976].)
The proceeding contemplated by Correction Law § 402 (5) is a “trial” in that it is a formal, dispositive proceeding, subject to the right to thereafter seek a jury verdict on the same issues. It is a “trial” in that the parties are entitled to open, present proof, cross-examine, and close consistent with the CPLR. Respondent’s right pursuant to article I, § 6 of the New York State Constitution is therefore squarely implicated. The *500 petitioner cannot seek to abridge the respondent’s constitutional right without showing both a compelling interest and that the means employed to implement that interest are narrowly tailored (see e.g., Matter of von Wiegen, 63 NY2d 163, 171 [1984]; e.g. Lehman v Shaker Heights, 418 US 298 [1974]).
The court finds that no compelling interest has been shown by the petitioner. Alleged savings on transportation costs are not a compelling interest sufficient to deny the respondent’s constitutional right to be personally present in court for the hearing. The petitioner failed to show a risk of injury to either the public, the respondent himself, court personnel, or the staff involved in transporting the respondent. Such a showing would certainly be more persuasive in determining whether to deny the respondent’s right to personally appear in this matter, and no such showing was made.
The petitioner cites United States v Baker (836 F Supp 1237 [ED NC 1993], affd 45 F3d 837 [4th Cir 1995]) in support of its claims that appearance by video link in a prisoner/mental health context is constitutionally permissible and that the technology available is sufficient to provide both judicial and prisoner/ patient access to testimony and witnesses. The court agrees with the respondent that Baker is an issue of federal law, does not address New York State law, and is not binding on this court. It is well settled that individual states may choose to grant greater protection to its citizens than the US Constitution provides. Baker concedes that many of the rights guaranteed in the US Constitution pertain to criminal defendants and do not fully extend to civil litigants. The New York Constitution, however, extends to civil litigants the right to personally appear and confront witnesses (NY Const, art I, § 6). Absent a showing of high risk or unrealistic cost involved with transporting the respondent, or the respondent’s personal consent to waive his right, neither of which have been demonstrated, the constitutional protection cannot be abrogated.
On the practical level, this court simulated a hearing by video link in this matter on May 5, 2006. Motions were heard by video conference as an offer of proof to determine the technical quality of the video link. Decision was then reserved because the respondent initially agreed to the proceeding by video conference, but prior to the scheduled date, rescinded his consent. There were significant differences between the implementation of the video conference proceedings in the case at bar and that described in Baker (supra). The Baker courtroom contained two *501 cameras, one fixed on the judge and the other on the Assistant United States Attorney General and two television monitors, one 25 inches directly in front of the bench and one 18 inches directly in front of the Assistant United States Attorney General’s table. The remote site also had two cameras, one focused on both Baker and his counsel and the other focused on the testifying witness. The remote site also had one 25-inch television monitor directly in front of Baker and his counsel. The presiding judge had the ability to choose which camera would display on the monitor and could change the camera views. The judge could also zoom in on Baker. Baker’s counsel also had the ability to control which camera view to display on the monitor, the judge’s camera view or the attorney’s camera view.
In the case at bar, there were only two cameras and two monitors, one set for each location. This court did not have the ability to see a close-up view of the respondent nor could it easily view the respondent and his counsel, nor was the court able to change its view from the respondent to the witness for a closer observation of the witness as the witness testified. The court respectfully suggests that the next attempt to conduct a mental hygiene hearing via video conference take into account the technological circumstances available in Baker (supra), as an example of how the court should be able to conduct such a hearing, assuming the constitutional issues can be resolved. The technology demonstrated in this case was simply not adequate.
Under the circumstances, both constitutional and practical, the respondent’s request that he be present, in court, for any hearing on the instant petition must be granted.
Witnesses via Video Link
The respondent argues that his right to face-to-face confrontation with witnesses, as guaranteed by the Confrontation Clause of US Constitution amendment VI (see Coy v Iowa, 487 US 1012 [1988]) and by article I, § 6 of the New York Constitution, will be violated by the introduction of witness testimony via video link. The right to face-to-face confrontation is not absolute, and may give way to important public policy exceptions provided there are other assurances of the testimony’s reliability (Maryland v Craig, 497 US 836 [1990]).
The petitioner’s main witness will likely be the respondent’s treating physician. Were the respondent to waive his right to be present in the courtroom, the witness would presumably be in the same room as the respondent during the hearing remote *502 from the court. Therefore, the face-to-face confrontation requirement would be satisfied because the witness will be forced to testify in front of the respondent under oath, the respondent would have adequate time to cross-examine the witness, and via video conference with the proper equipment, the judge would be able to observe the witness’s demeanor and the respondent’s demeanor throughout the proceeding. All the assurances of the reliability of the witness’s testimony would be present, and there would be no violation of the Confrontation Clauses.
In the circumstance that the respondent chooses to be personally present in court, the court finds that the Confrontation Clauses are not violated by the witness testifying by video conference, assuming the proper equipment is in place.
The respondent argues that CPLR 3117 (a) prohibits a witness from testifying live via video conference. While CPLR 3117 (a) addresses the use of depositions in lieu of live testimony, the court notes that CPLR 3117 (a) (4) allows a party to use a deposition of a physician without a prior showing of unavailability or special circumstances. The court is authorized by CPLR 3117 (a) (4) to admit into evidence depositions of physicians as the statute permits these as of right. Based on CPLR 3113, Uniform Rules for Trial Courts (22 NYCRR) § 202.15 permits the taking of videotaped depositions, which may be used pursuant to any of the CPLR 3117 exceptions to the hearsay rule. The most broad exception relates to physicians, and the policy reason therefore is obvious. Physicians’ schedules are hectic, and live appearances by them are costly to the parties, the physician, and the health care system overall. Utilizing this technique to record their testimony, without a judge present, prior to a trial, has specific statutory sanction. Use of video conferencing improves upon the contemplated statutory result in that the physician will testify in real time with the judge able to rule immediately on objections. Given the broad hearsay exception permitted by CPLR 3117 (a) (4), it is only logical that the real time distance testimony of a physician, as proposed in this case, be permitted.
The respondent’s argument that CPLR 4013 precludes this arrangement is not persuasive. The judge, lawyers, and court reporter will all be in the courtroom with exhibits, which may be certified copies of medical records. The witness will have access to same, only the witness stand will be miles away. CPLR 4013 was in existence prior to CPLR 3117 (a) (4). If the *503 Legislature viewed the two statutes as contradictory, they would have referenced an exception or made a modification.
Then Deputy Chief Administrative Judge Joseph J. Traficanti, Jr. wrote correspondence authorizing some form of video conferencing proceedings in mental hygiene cases. The Office of Court Administration (hereinafter OCA) undertook such a project on an experimental basis based on its inherent powers. Indeed the Legislature has authorized the OCA to administer the court system and issue rules (NY Const, art VI, § 28; Judiciary Law § 210 et seq.).
With New York Constitution, article I, § 6 as the foundation, and following the statutory concept of statutes in pari materia (upon the same subject matter) and cognate subjects, CPLR 3117 (a) (4) and 4013, Uniform Rules for Trial Courts (22 NYCRR) § 202.15 and Judge Traficanti’s memo all are symmetrical and should be read together. McKinney’s Consolidated Laws of NY, Book 1, Statutes, chapter 6, § 221 (b) states: “In accordance with general rules of construction, statutes which are in pari materia are to be construed together as though forming part of the same statute.” Therefore, the court opines that, although CPLR 3117 should not apply generally to live testimony given via video conference, the petitioner’s witness’s testimony — respondent’s treating physician — should be allowed for the same reasons that support CPLR 3117 (a) (4).
In United States v Gigante (166 F3d 75 [2d Cir 1999]), the Second Circuit reasoned that a closed-circuit presentation of testimony provides greater protection than airing a videotaped deposition because the testifying witness would be testifying before a jury, in front of the defendant, and would allow the jurors to observe the witness’s demeanor (id. at 81). The court held that, when determining whether to allow a videotaped deposition, the court must find that exceptional circumstances exist: the “witness’s testimony is material to the case” and the witness is unavailable — as defined in Federal Rules of Evidence rule 804 (a) — to appear at trial (id.). The court found that if there exist exceptional circumstances, and the testimony furthers the interest of justice, then the testimony via two-way closed-circuit television would be admissible (id.).
As stated above, CPLR 3117 (a) (4) allows taped depositions of physicians to be played without a showing of exceptional circumstances or unavailability. Therefore, the court holds that, in the scenario where the respondent chooses to personally appear in court, the petitioner’s witness may remain at the remote site *504 and testify via video conference in full satisfaction of the Confrontation Clauses of US Constitution amendment VI and NY Constitution, article I, § 6. The court agrees with the Gigante court that two-way closed-circuit television testimony is more reliable than a videotaped deposition.
The petitioner may call any physician so indicated by video conference, requiring that counsel for both sides be present in court. Otherwise, the court holds that respondent should sign a waiver of his right to personally appear in court if the hearing is to be conducted by video conference equipment.
The testimony of the physician witness is received and further testimony will be scheduled forthwith.

. The court reviewed three communications from the State of New York Unified Court System authored by then Deputy Chief Administrative Judge Joseph J. Traficanti, Jr., dated January 15, 2002, February 15, 2002 and December 23, 2003. Judge Traficanti does not outline all of the precise uses contemplated for this technology but succinctly and eloquently states the position of the Office of Court Administration in the February 2002 letter to Sydney Hirschfeld, Director of Mental Hygiene Legal Service, Second Judicial Department:
“As you suggest, the appropriateness of a particular case for video-conferencing will be determined on a case-by-case basis. Obviously, the restrictions contained in Article 182 of the Criminal Procedure Law limit the use of vide[o]-conferencing in criminal cases. However, there are no such restrictions in matters of a civil nature. We have concluded in the past when expanding *499 the use of electronic recording that the Chief Administrative Jud[g]e has the inherent authority to bring the courts into the 21st century utilizing technology that was not anticipate[d] in the past. While Article 182 is couched in permissive language, it actually limits the use of video-conferencing equipment in criminal cases. No such restrictions are found in civil cases, therefore, we will proceed to initiate these pilots. I look forward to working with you and the other directors as we implement this pilot.”

. May 18, 2006 affirmation of Joel L. Marmelstein, Esq. at 3, ¶ 5.